UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAYSTATE MEDICAL CENTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 1:06-cv-1263-JDB |
| MICHAEL O. LEAVITT, *et al.*, | ) ) ) |
| Defendants. | ) ) |

### *AMICUS CURIAE* BRIEF OF PLAINTIFFS IN CIVIL ACTION NO. 07-2075 IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT ONE AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IN CIVIL ACTION NO. 06-1263

Plaintiffs in *Auburn Regional Medical Center, et al., v. Leavitt* ("*Auburn*"), Civil Action No. 07-2075, through their undersigned counsel, respectfully submit this *amicus curiae* brief in the above-captioned action ("*Baystate*") in accordance with the Court's November 29, 2007 orders entered in both *Baystate* and *Auburn*.

### I. INTRODUCTION

*Baystate* is an action for judicial review of the final decision of the Secretary of Health and Human Services ("the Secretary") concerning the Plaintiff hospital's challenge to the determinations of the Medicare disproportionate share hospital ("DSH") payments made to Plaintiff hospital for fiscal years ("FYs") 1993 – 1996 under the Medicare prospective payment system ("PPS"). The *Baystate* Plaintiff challenges the "SSI fractions" used to calculate the DSH payments at issue in that case on the grounds, *inter alia*, that the SSI fractions were based on several

"systemic errors" that caused the DSH payments at issue to be "improperly understate[d]." Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment ("Pl.'s Init. Brief") at 2.

## II.  INTEREST OF AMICI

The *Auburn* Plaintiffs are seventeen general, acute care hospitals that participate in the Medicare program and, for all times relevant to both *Auburn* and *Baystate*, have been paid under Medicare PPS. The *Auburn* Plaintiffs challenged the DSH payment determinations made with respect to them for FYs 1987 – 1994 on the basis of the errors identified in *Baystate*, as set forth in the decision of the Provider Reimbursement Review Board ("the Board"). These challenges were filed after the time set forth in the applicable statute, 42 U.S.C. §1395oo, and implementing regulation, 42 C.F.R. §405.1841, for seeking agency review of the DSH payments at issue, because the *Auburn* Plaintiffs were not aware of the errors identified in *Baystate*, and the concealment of those errors, until the Board's decision was issued.

Therefore, in addition to seeking a decision on the merits of the issues in *Baystate* as they apply to the *Auburn* Plaintiffs for the FYs at issue in *Auburn*, the *Auburn* Plaintiffs are also seeking equitable tolling of the time for filing their administrative appeals on the grounds that their failure to file timely was caused, *inter alia*, by the Secretary's concealment of known errors relating to the Secretary's determination of the SSI fraction, as also elucidated in *Baystate*. Accordingly, when

4812048.4

filing their Complaint, the *Auburn* Plaintiffs identified *Baystate* as a "related case" under Local Rule 40.5(b)(2).

### III.  THE COURT'S ORDER RELATING TO THE FILING OF THIS BRIEF

The Court conducted a status conference on November 29, 2007 in both *Auburn* and *Baystate*, at which the Court scheduled a hearing for February 14, 2008 on the pending cross-motions for summary judgment in *Baystate*.  At that time, the Court also issued orders in both *Baystate* and *Auburn* setting January 7, 2008 as the due date for the *Auburn* Plaintiffs to file an *amicus curiae* brief in *Baystate*.  As a result of the Court's granting a request for an extension of time filed by the *Auburn* Plaintiffs, the *amicus curiae* brief is now due on January 9, 2008 and responses from the *Baystate* Defendants and Plaintiff are currently due on February 6, 2008.

### IV.  SUMMARY OF AMICI'S ARGUMENT

The *Baystate* parties have filed extensive briefs on their respective summary judgment motions.  After thoroughly reviewing these briefs, and other supporting documents, the *Auburn* Plaintiffs support the compelling arguments made by the *Baystate* Plaintiff in its motion for summary judgment and oppose the motion for summary judgment filed by the *Baystate* Defendants.  Accordingly, the *Auburn* Plaintiffs will rely on the agreed-to facts in the cross-motions as they relate to the *Auburn* Plaintiffs, including the applicable statutory and regulatory authorities.

The *Auburn* Plaintiffs will address only two issues in this *amicus curiae* brief to supplement the filings by the *Baystate* parties. First, the Secretary's contention that there is an unspecified materiality threshold for retroactive recalculation of the DSH payments at issue in *Baystate*, which the *Baystate* Plaintiff allegedly failed to meet, ignores 42 U.S.C. §1395oo, which establishes $10,000 as the jurisdictional amount required for a PPS hospital seeking administrative and judicial review of its Medicare payment for a particular FY. As a result, mandatory retroactive recalculation of the *Baystate* Plaintiff's DSH payments is required if the errors in the SSI fraction caused the DSH payments for any of the FYs at issue in that case to be understated by $10,000 or more for any FY. Second, we explain that the Secretary must exclude Medicare HMO days when calculating the SSI fraction.

### V. ARGUMENT

**I.     Retroactive Recalculation of a PPS Hospital's DSH Payment is Required if an Erroneous SSI Fraction Caused the DSH Payment for a Particular FY to be Understated by $10,000 or More.**

The *Baystate* parties offer starkly contrasting views as to the right of Medicare PPS hospitals to relief in the form of retroactive correction of DSH underpayments caused by erroneous SSI fractions. The Secretary in *Baystate* argues that the *Baystate* Plaintiff is not entitled to retroactive recalculation of the DSH underpayments at issue in that case because they did not exceed a materiality threshold. Reply in Support of Defendants' Motion for Summary Judgment ("Sec.'s Reply") at 12. The *Baystate* Plaintiffs respond that "[n]either the Medicare Act nor the Secretary's 20-year old regulation interpreting his responsibilities under that

statute permit him to conclude that anything other than an accurate count of SSI days is permissible." Plaintiff's Reply Memorandum in Support of Its Motion for Summary Judgment and Memorandum in Opposition to Defendant Leavitt's Motion for Summary Judgment ("Pl.'s Reply") at 3.

More specifically, as a result of the extensive briefing by the parties in *Baystate*, it has been conclusively established that the central issue in this case is whether the CMS Administrator properly concluded based on the record in *Baystate* "that the effect of any imprecision in calculation [of the SSI fraction for the FYs at issue in *Baystate*] was modest enough that retroactive recalculation [of the *Baystate* Plaintiff's DSH payments for FYs 1993 – 1997] was not required." Sec.'s Reply at 12.

Implicit in this formulation by the Secretary is his concession that retroactive recalculation ***is required*** if the effect of the imprecision in the calculation of the SSI fraction on the DSH payments at issue exceeds a certain materiality threshold. However, the Secretary does not identify that threshold. He merely asserts that the threshold, whatever it may be, has not been met by the *Baystate* Plaintiff for the FYs at issue in that case.

However, there is no need to speculate on the applicable threshold because Congress established the threshold for mandatory retroactive correction of DSH payments when it enacted 42 U.S.C. §1395oo. This statute states that a PPS hospital "may obtain" administrative and judicial review if (a) it "is dissatisfied with

a final determination of the Secretary as to the amount of payment" under PPS and (b) the "amount in controversy is $10,000 or more."[1]  42 U.S.C. §1395oo(a)(1)(A)(ii) and (2).  Where, as here, Congress has provided for administrative and court review of an issue at a $10,000 threshold, it is clear that Congress has declared that to be the threshold of materiality for insisting upon retroactive correction.[2]  Medicare underpayments that exceed $10,000, therefore, are subject to retroactive recalculation, regardless of whether they relate to DSH or other aspects of a PPS hospital's Medicare payment.

The process for administrative and judicial review under this statute starts with an appeal to the Board which, under 42 U.S.C. §1395oo(d), has "the power to affirm, modify, or reverse a final [Medicare payment] determination."  Hospitals have the explicit statutory right to seek federal court review of final agency action concerning a Medicare payment issue addressed by the Board.  Specifically, under 42 U.S.C. §1395oo(f)(1):

---

[1] The $10,000 threshold applies to a single issue or a combination of challenged issues.

[2] This statute does not preclude the Secretary from exercising discretion to grant relief for lesser Medicare underpayments, even though they will not necessarily be reviewable judicially.  The Secretary has, in fact, done this by a regulation allowing administrative (but not judicial) review of Medicare PPS underpayments of less than $10,000, but at least $1,000.  42 C.F.R. §405.1809.  In doing so, the Secretary set forth a statement concerning the exercise of such discretion, which is wholly absent here.  39 Fed. Reg. 34514 (September 26, 1974).

> Providers shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received.

The Secretary has not disputed that this Court properly has jurisdiction over the *Baystate* action under this statute.

Accordingly, when determining whether retroactive correction is required in *Baystate*, both the Secretary, and this Court, are bound by this clear direction from Congress.  It is the *Auburn* Plaintiffs' understanding that the *Baystate* Plaintiff's DSH underpayment far exceeds $10,000 for each FY at issue in that case.  Plaintiff's Statement of Material Facts as to Which There is No Genuine Dispute at ¶120.  Therefore, retroactive correction of the DSH payments at issue in *Baystate* is required under 42 U.S.C. §1395oo.

Although the Secretary implies that some other threshold applies to appeals of DSH underpayments caused by erroneous SSI fractions, he has never identified either that threshold or the basis for that threshold in the provisions of Title XVIII of the Social Security Act ("the Medicare Act") or any other statute.  Indeed, the Secretary has never even asserted that such a threshold applies in appeals of DSH underpayments caused by errors in the other fraction used in the DSH calculation, the Medicaid fraction, or that such different treatment of DSH appeals involving challenges to the Medicaid and SSI fractions is addressed in the DSH regulation, 42 C.F.R. §412.106.  In fact, he has never set forth this alleged threshold in any regulation, adjudication, or subregulatory issuance, other than arguing in *Baystate*

that the reimbursement effect of the "imprecision" of the SSI fractions in that case does not require correction.

The Secretary's contention ignores the specific statutory directive. Congress explicitly established that $10,000 is the materiality threshold for Medicare appeals, including DSH appeals, and the Secretary and the Courts have adhered to this threshold in literally hundreds of DSH appeals involving the Medicaid fraction. Pl.'s Init. Brief at 11. The Secretary has not identified any reason in *Baystate* or elsewhere why DSH underpayments caused by a faulty SSI fraction should be subjected to a materiality threshold that does not apply to DSH appeals based on challenges to other aspects of the DSH calculation.[3]

Moreover, the Secretary has been inconsistent in the applicability of this alleged materiality threshold. For example, in a recent decision concerning the SSI fraction used to determine the DSH payments for Saint Mary's Mercy Medical Center for FYs 2000 and 2001, the CMS Administrator did not even assert the applicability of any materiality threshold. *Saint Mary Mercy Medical Center v. United Government Services*, CMS Adm. Dec. (October 24, 2007) (Exhibit A hereto), appealed *sub nom Trinity Health-Michigan v. Leavitt*, Civil Action 07-2318 (JR) (D.D.C.).

---

[3]   In this regard, the *Baystate* Plaintiff notes that the Secretary "has required recalculation of SSI ratios when errors in the hospitals' favor were as small as 1.8 percent and the resulting dollar impact was as little as $2,247." Pl.'s Reply at 8 n. 8.

As a result of the foregoing, and other reasons set forth in the briefs filed by the *Baystate* Plaintiff, the Secretary's position is not entitled to deference under *Chevron*, as sought by the *Baystate* Defendants. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Under the Administrative Procedure Act, 5 U.S.C. §§551 *et seq.*, a reviewing court is to "hold unlawful and set aside agency action … found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706. It is a basic tenet of law that an administrative action that is inconsistent with the underlying statute is void and unenforceable. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 413-14 (1971) ("In all cases agency action **must be set aside** if the action was '…not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements") (emphasis added; citing and quoting 5 U.S.C. §706(2)). Under that standard, this Court must reverse the Secretary's attempt to apply a materiality threshold (other than that established by Congress) to avoid retroactive recalculation of the DSH payments at issue in *Baystate*.

Based on the foregoing, it is clear that (a) the most stringent materiality threshold that applies to judicial challenges to the SSI fraction used in a DSH payment determination is the jurisdictional floor of $10,000 established in 42 U.S.C. §1395oo, (b) the Secretary has never established any other materiality threshold applicable to *Baystate* or any other challenge to a DSH payment determination, and (c) the Secretary has been inconsistent about whether such a threshold (whatever he thinks it is) generally applies even to SSI fraction appeals. Accordingly, the

Secretary's contention is inconsistent with the underlying statute and must be set aside.

## II. The Secretary Must Exclude HMO Days When Calculating the SSI Fraction.

The *Baystate* Parties extensively briefed the issue of whether Medicare HMO days should be included in the SSI fraction and the *Baystate* Plaintiff made several compelling arguments showing that these days should, in fact, be excluded. In addition, the *Auburn* Plaintiffs note that Congress made clear in 1997 that Medicare beneficiaries who enroll in a Medicare HMO no longer qualify for benefits under Medicare Part A. Accordingly, inpatient days related to Medicare HMO enrollees must be excluded from the SSI fraction because they are not days for which a patient was "entitled to benefits under [Medicare] part A." 42 U.S.C. §1395ww(d)(5)(F)(vi)(I).

Specifically, §4001 of the Balanced Budget Act of 1997 ("BBA"), Pub. Law No. 105-33, amended the Medicare Act by, *inter alia*, adding a new Part C that included statutes relating to Medicare HMOs. One provision enacted by the BBA, codified at 42 U.S.C. §1395w-21, provides that, in order to be eligible to enroll in a Medicare HMO, an individual must be entitled to benefits under Medicare Part A. 42 U.S.C. § 1395w-21(a)(3)(A). But, once an individual elects to enroll in a Medicare HMO, he or she "is entitled to receive benefits under [the Medicare statute] ...

through enrollment in a Medicare+Choice plan[4] under this part [*i.e.,* Part C]." 42 U.S.C. § 1395w-21(a)(1)(B). Accordingly, once enrolled in a Medicare HMO, payments for Medicare HMO enrollees are made from Medicare Part C, rather than from Parts A or B.

Moreover, once a Medicare beneficiary is enrolled in a Medicare HMO, CMS makes payment to the contracted plan and those payments generally are in lieu of "the amounts which (in the absence of the contract) would otherwise be payable under parts A and B for items and services furnished to the individual." 42 U.S.C. §1395w-21(i)(1); *see also* 63 Fed. Reg. 34968 (June 26, 1998) ("Under section 1851(a)(1), every individual entitled to Medicare Part A and enrolled under Part B…may elect to receive benefits through *either* the existing Medicare fee-for-service program or a Part C M+C plan."). This is also confirmed by Chapter 5, §10.1 of the Medicare Managed Care Manual, which states:

> An MA organization offering an MA plan must provide enrollees in that plan with all original Medicare-covered services (that is, Part A and Part B services), except hospice, by furnishing the benefit directly or through arrangements, or by paying on behalf of enrollees for the benefit.

Accordingly, during the period of enrollment in a Medicare HMO, the so-enrolled Medicare beneficiary is not entitled to have payments for services made on his or her behalf under Medicare Part A.

---

[4] Under the BBA, Medicare HMOs were called Medicare+Choice or "M+C" plans. They are now called Medicare Advantage or "MA" plans.

The Secretary concedes that payment is not made under Part A for Medicare HMO enrollees.[5] Nevertheless, he argues that the days attributable to Medicare HMO enrollees should be included in the SSI fraction because these enrollees "were," or could have been, "entitled to Part A benefits." However, the Secretary has not explained how such an enrollee can be considered to be "entitled to" Part A benefits while *at the same time* unable to obtain any benefits available under Part A. Not only does this position lack legal and factual merit, it contradicts that which Congress crystallized in 1997.

Because Medicare beneficiaries that enroll in a Medicare HMO are not "entitled to benefits under Part A" during their period of enrollment, the days attributable to these beneficiaries should be excluded from the SSI fraction.

---

[5] Defendants' Memorandum of Points and Authorities in Support of Defendant Leavitt's Motion for Summary Judgment and In Opposition to Plaintiff's Motion for Summary Judgment ("Sec.'s Init. Mem.") at 25; Reply in Support of Defendants' Motion for Summary Judgment ("Sec.'s Reply Mem.") at 9.

## VI.  CONCLUSION

Based on the foregoing, the Court should grant the *Baystate* Plaintiff's Motion for Summary Judgment as to Count I, deny the *Baystate* Defendants' Motion for Summary Judgment, and hold that (a) there is no special materiality threshold for DSH appeals, either generally or based on the SSI fraction, and (b) HMO days should not be included in the SSI fraction.

Respectfully submitted,

Dated: January 9, 2007

    /s/ Robert L. Roth
Robert L. Roth, Esq. (D.C. Bar No. 441803)
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595
Tel: (202) 624-2870
Fax: (202) 628-5116
rroth@crowell.com
Attorneys of Record for *Amici Curiae* – Plaintiffs in *Auburn Regional Medical Center v. Leavitt*, Case No. 07-2075

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on the 9th day of January, 2008, I electronically filed Amicus Curiae Brief of Plaintiffs in Civil Action No. 07-2075 in Support of Plaintiff's Motion for Summary Judgment as to Count One and in Opposition to Defendants' Motion for Summary Judgment in Civil Action No. 06-1263 using the CM/ECF system which will automatically send email notification of such filing to the following counsel of record in *Baystate Medical Center v. Leavitt, et al.*, Civil Action 06-1263:

Brian G. Kennedy
Lisa A. Olson
U.S. Department of Justice
20 Massachusetts Avenue, N.W.
Room 7300
Washington, D.C. 20530
*Brian.Kennedy@usdoj.gov*
*Lisa.Olson@usdoj.gov*
Counsel for Defendants

and

Christopher L. Keough
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
*ckeough@velaw.com*
Counsel for Plaintiff

/s/ Robert L. Roth_____
Robert L. Roth