UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BAYSTATE MEDICAL CENTER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06-cv-01263 |
| MICHAEL O. LEAVITT, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

DEFENDANTS' RESPONSE TO *AMICI CURIAE*
BRIEF OF PLAINTIFFS IN CIVIL ACTION 07-2075

*Amici* argue that since one condition of administrative review of Medicare hospital reimbursement decisions is that the "amount in controversy is $10,000 or more," 42 U.S.C. §1395*oo*(a)(2), Congress has already decided that retroactive corrections are always required in such cases whenever the amount in controversy exceeds $10,000. *Amici* Mem. at 4-10  That jurisdictional provision no more answers the substantive question whether retroactive corrections are required in Medicare cases than the $75,000 amount-in-controversy provision of 28 U.S.C. § 1332(a) answers substantive questions in diversity cases.  As the Court of Appeals has held in the particular instance of Medicare reimbursement of hospitals, the argument "'that 'the right to appeal necessarily assumes the right to have corrections determined retroactively' . . . . is untenable." *Methodist Hospital v. Shalala*, 38 F.3d 1225, 1230 (D.C. Cir. 1994).

*Amici* also argue (*Amici* Mem. at 8) that the Secretary "has been inconsistent" in assessing whether retrospective recalculations are required, citing a recent decision in *St. Mary Medical Center v. United Government Services*, CMS Adm. Dec. (Oct. 24, 2007), *appealed sub nom. Trinity Health-Michigan v. Leavitt*, No. 07-2318 (D.D.C.). In fact, that decision specifically notes that "[t]he Secretary has consistently recognized the administrative burdens involved in calculating the Medicare fraction and has made policy decisions balancing the need to reduce administrative burdens and the need for timely, accurate data," *St. Mary Medical* at 7, and the decision even incorporates by reference the decision below in this case, *id.* at 11 n.23.

Finally, *amici* argue that a statutory provision passed in 1997, 42 U.S.C. § 1395w-21, answers the question how "Medicare HMO" admissions should have been dealt with. *Amici* Mem. at 10-12. *Amici* never explain why a statutory provision passed in 1997 to create Medicare Part C resolves how the Secretary should have dealt with the Medicare HMO admissions for the years at issue in this case, 1993 through 1996.

In any event, even if the 1997 statutory provision had been applicable during the years in question, it would have further supported the Secretary's decision. Under the statute, to be eligible for Medicare + Choice plans (the new, post-1996 Medicare "Part C" plans sometimes referred to as "Medicare HMO" plans) an individual must be "an individual who is entitled to benefits under Part A." 42 U.S.C. § 1395w-21(a)(3). Under the post-1996 Part C, a person who is so entitled to

benefits may receive benefits either "through the original medicare fee-for-service program under parts A and B" or "through enrollment in a Medicare + Choice plan." 42 U.S.C. § 1395w-21(a)(1) (emphasis supplied).  The denominator of the SSI fraction of the disproportionate share provision of the statute is phrased in terms of whether patients during a hospital stay "were entitled to benefits under Part A," 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I), not whether Part A or Part C is the mechanism through which benefits are delivered.  That language is precisely parallel to 42 U.S.C. § 1395w-21(a)(3), which reinforces Congress' intent that one must indeed be "entitled to benefits under Part A" in order to receive benefits through the Part C mechanism.  Such persons are "entitled to benefits under Part A" as that identical phrase is used both in Part C and in the disproportionate share provision.

Under *amici*'s view, a hospital could take steps that would either or both 1) decrease the proportion of poor patients it is actually serving without seeing a comparable decrease in the proportion of poor patients it would be measured as serving, or 2) increase its measured disproportionate share fraction without any

corresponding real world change.[1]  *Amici* offer no reason why Congress should have chosen to direct such a perverse outcome.

>                             Respectfully submitted,
>
>                             JEFFREY S. BUCHOLTZ
>                             Acting Assistant Attorney General
>
>                             JEFFREY A. TAYLOR
>                             United States Attorney

---

[1] Since including Medicare + Choice patients in the denominator means that those of them who are also Supplemental Security Income ("SSI") recipients will be in the numerator, whether including or not including Medicare + Choice recipients in the calculations will raise or lower the hospital's fraction depends on whether Medicare + Choice patients are on average more or less likely than other Medicare beneficiaries to be receiving SSI.  Since Medicare + Choice plans are open to all Medicare beneficiaries regardless of income who are both entitled to Part A benefits and enrolled under Medicare Part B, 42 U.S.C. § 1395w-21(a)(3)(A), there is no *a priori* answer to that question, and the record in this case does not answer that question as a global proposition either.  However, that both plaintiff and *amici* argue in favor of not counting Medicare + Choice patients strongly suggests that they at least believe that Medicare + Choice patients of the plans with which these hospitals choose to contract are less likely to be receiving SSI benefits than other Medicare patients.  (Whether a given hospital is a participating provider in a particular Medicare + Choice plan is a matter of negotiation and agreement between each plan and each hospital.  *See* 42 U.S.C.§ 1395w-22(d).)  If a Medicare + Choice plan's patients are less likely than average to be on SSI, then, if *amici*'s arguments were accepted, whenever a hospital chooses to serve that plan's patients, it would be either or both: 1) decreasing the proportion of Medicare patients it actually serves who are on SSI (to the extent the patients were not formerly part of the hospital's client base); or 2) increasing the hospital's measured SSI fraction without changing its real SSI fraction (to the extent that the patients were already part of the hospital's client base and are merely shifting from the Part A payment mechanism to the according-to-*amici*-no-longer-to-be-counted Part C mechanism).  There is nothing wrong with hospitals choosing to be providers for such Medicare + Choice plans, but there is also no reason why any resulting reduction in the proportion of Medicare-SSI patients they are serving should not be counted and no reason why a mere shift of patients from one payment mechanism to another should artificially increase a hospital's SSI fraction.

/s/ Brian G. Kennedy
SHEILA M. LIEBER
BRIAN G. KENNEDY (D.C. Bar No. 228726)
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, D.C. 20530
Tel.:  (202) 514-3357
Fax:  (202) 616-8470
Email:  Brian.Kennedy@usdoj.gov

Attorneys for Defendants