UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAYSTATE MEDICAL CENTER,          )
                                  )
        Plaintiff,                )
                                  )
v.                                )        C.A. No. 06-1263 (JDB)
                                  )
MICHAEL O. LEAVITT, *et al.*,     )
                                  )
        Defendants.               )

**PLAINTIFF'S MOTION TO AMEND
THE COURT'S OPINION AND ORDER ON COUNT ONE
AND STATUS REPORT ON COUNTS TWO AND THREE**

Plaintiff hereby moves to amend the Court's Memorandum Opinion and Order dated March 31, 2008 on the parties' cross-motions for summary judgment on Count One of the Complaint. Points and authorities in support of the motion are set forth in Part I below. In accordance with the March 31 Order, Plaintiff also submits in Part II below its status report with respect to Counts Two and Three.

**I.      Motion to Amend Opinion and Order**

The Court's meticulous decision lays bare the wholesale unreasonableness of the Secretary's approach to the calculation of Plaintiff's SSI fraction in the years at issue. The Court's chosen remedies, however, are not in keeping with the violations the Court properly found on a materially uncontested record or with the applicable provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). For the reasons that follow, Plaintiff respectfully submits that given the Court's findings that at least some aspects of the Secretary's decision are arbitrary and capricious, section 706(2) of the APA requires the Court to vacate the Secretary's decision, not simply remand it.

Further, while a remand is required (after the Secretary's decision is vacated) to recalculate the SSI ratios at issue, the case should not be remanded for further evidentiary proceedings before the Provider Reimbursement Review Board ("PRRB" or "Board") or further deliberations by the Administrator concerning the match process. Remand to the PRRB for further evidentiary proceedings as to whether CMS dropped all SSI records that lacked a Title II number is unnecessary to reach the conclusion that match process is flawed and incorrect for other reasons that the Board found (*i.e.*, failure to use social security numbers), and it will only further delay Plaintiff's long-awaited relief from underpayments for services rendered during a period that began more than 15 years ago. Additionally, it is inappropriate to remand to the Administrator to provide a further explanation, if any, as to why he alleges that social security numbers are not the best available data for the match process. This aspect of the Administrator's decision is unsupported by the record evidence compiled in the hearing required by statute, and the APA, therefore, requires the Court to set it aside now. *See* 5 U.S.C. § 706(2)(E); *Biloxi Regional Med. Ctr. v. Bowen*, 835 F.2d 345, 348-49 & n.13 (D.C. Cir. 1987).

Having successfully shown that the Secretary's calculations are wrong, Plaintiff also is entitled to an order directing the Secretary to pay the hospital the additional DSH sums due as a result of required corrections in the SSI ratios at issue, plus statutory interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2). Finally, Plaintiff requests that the Court issue reasonable instructions for the recalculations to be performed by the Secretary on remand, not to micromanage the agency, but to assure prompt and faithful compliance with its decision. Because the Secretary failed to join

issue on this point, the Court did not have the benefit of thorough briefing and argument as to remedy, and its decision on relief should be revisited.[1]

### A. The Secretary's Decision Must Be Vacated.

Plaintiff requests that the Court amend its Order so that it expressly vacates the Secretary's final decision dated May 11, 2006 before remanding to the agency to recalculate Plaintiff's SSI fractions for the years at issue. Section 706(2) of the APA requires the Court to "set aside" agency action that is found to be arbitrary and capricious, unsupported by substantial evidence in the record, or otherwise contrary to law. In its Memorandum Opinion, the Court plainly held that that Secretary's final decision is arbitrary and capricious in several critical respects. *See* Mem. Op. 64. Accordingly, the Court is required to vacate that decision, not simply remand it. *See Checkosky v. Securities and Exchange Commission*, 23 F.3d 452, 491 (D.C. Cir. 1994) (Randolph, J., writing separately) ("Section 706(2)(A) provides that a 'reviewing court' faced with an arbitrary and capricious agency decision 'shall' – **not may** – 'hold unlawful and set aside' the agency action. . . . Setting aside means vacating; no other meaning is apparent."). Cases in which remands are granted (without first vacating the agency rule or order at issue) are ones in which the reviewing court – *unlike here* – has not yet concluded that the agency acted in an arbitrary and capricious manner and has decided to remand for further explanation from the agency before finally deciding the question. *See, e.g., County of Los Angeles v. Shalala*, 192 F.3d 1005, 1023 (D.C. Cir. 1999) (declining

---

[1] Plaintiff has conferred with the Secretary's counsel regarding Plaintiff's motion to amend the Court's Opinion and Order, and it is Plaintiff's understanding that the Secretary will oppose it.

to "declar[e] definitively that [the Secretary's] decision was arbitrary and capricious without first affording her an opportunity to articulate, if possible, a better explanation.")

It does not matter that, alongside the many respects in which the Court found arbitrary and capricious conduct, there are two issues that the Court finds inadequately explained in the record (*i.e.,* whether SSI records without Title II numbers were excluded from the match process and whether the Secretary has an explanation for not using Social Security numbers in that process).[2] Remands for additional explanation typically occur in challenges to agency rules, as in *County of Los Angeles*, where the reviewing Court decides to allow the agency an opportunity to more fully explain its rationale before declaring a rule invalid. *See id.* at 1020-23. In contrast, this is a case for review of an administrative decision based on the record evidence compiled in a *hearing required by statute*. *See Biloxi Regional Med. Ctr. v. Bowen*, 835 F.2d 345, 348-49 & n.13 (D.C. Cir. 1987). In such cases, the applicable provision of the APA and Circuit precedent require the reviewing court to set aside the agency's decision if it is "unsupported by substantial evidence" in that record. *See* 5 U.S.C. § 706(2)(E); *Biloxi Regional Med. Ctr.*, 835 F.2d at 348-49 & n.13 ("a reviewing court must set aside PRRB decisions found to be 'unsupported by substantial evidence' after the court has reviewed the whole record"). When the hearing record before the agency cannot sustain its result – and that is certainly the case here -- that result must be vacated in accordance with the plain language of Section 706(2)(E) of the APA.

---

[2]   Remand of these two issues would result in unnecessary delay in any event. *See* Part I B & C below.

4

Even assessing this question through the lens of the arbitrary and capricious standard of review as applied to an agency rulemaking, however, remand would still be inappropriate. In such cases, the determination whether to remand and to provide the agency with a further opportunity to explain itself "depends on [1] the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and [2] the disruptive consequences of an interim change that may itself be changed." *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 75-56 (D.C. Cir. 2002); *see also id*. at 757-58 (Sentelle, J., dissenting). This Court's thorough opinion leaves no doubt that the agency calculations, and the Administrator decision affirming them, were wrong in several respects. Moreover, the potential for "disruption" inherent in a final order invalidating an agency rule of general applicability, *see Milk Train*, 310 F.3d at 756, is not present in this action for review of the Secretary's decision on the record compiled in the administrative adjudication of the DSH payment determinations at issue for the hospital's fiscal years 1993-1996.

B. **Further Proceedings on Remand to PRRB are Unnecessary.**

Plaintiff requests that the Court amend its Memorandum Opinion and Order so as not to require remand to the PRRB for further evidentiary proceedings to determine whether SSI records without Title II numbers were excluded from the match process. *See* Mem. Op. 46. The record in this case shows that further evidentiary proceedings on this factual question would result in unnecessary delay in this already long-running dispute and would be futile in any event.

As the Board found (Dec. at 20-21), the Secretary's match process produces false negatives, and would have produced false negatives even if the SSI records without Title II numbers were included in the data that CMS matched against, because the Secretary's match process attempts to match apples with oranges. That is, even if we credit Dean's hypothesis that his program would manufacture a hypothetical "Title II number" based on the social security number reflected on each SSI record that lacks a Title II number, the resulting match process is still fatally flawed, and systematically understated, because it attempts to match Dean's manufactured "Title II" numbers - derived from individuals' own social security numbers - with HIC numbers that often are not based on the Medicare beneficiary's own individual social security number. *See* PRRB Dec. at 21 ("Dean admitted that there is no way that CMS' SSI match program would produce a match in this example, even if it actually worked the way he now thinks it might have worked.")

Moreover, further evidentiary proceedings before the Board would be futile because the record in this case reflects that there is no available evidence that would definitely show that SSI records without Title II numbers were included in the match

process for all years at issue here. The definitive answer to that question could only be found, as Dean himself testified, by review of the actual SSISORT program that CMS used to calculate the SSI fractions at issue. In the proceedings below, Plaintiff sought discovery of the computer program (SSISORT) that CMS runs to perform the match process. But, CMS and Dean repeatedly assured Plaintiff and the Board that the version of that program that was used for the years at issue does not exist now and cannot be recreated.[3] *See* PRRB Dec. at 18 & nn. 83-84.

In summary, even if the agency's SSISORT program did impute hypothetical Title II numbers for those records that SSA furnished to CMS without a Title II number (and further evidentiary proceedings will not yield a definitive, clear answer to that question), the undisputed record evidence shows that the resulting matches are still understated because CMS attempted to match patient identifiers that are not identical in all cases. Accordingly, Plaintiff respectfully requests that the Court amend its Opinion and Order so as not to require further evidentiary proceedings before the Board which may take years to complete and are not likely to yield any more definitive evidence. Given the Administrator's prior decision in this case that the Board lacks power to compel discovery from CMS (Pl. Stmt. ¶ 247), and in view of the prior procedural history of this case, Plaintiff is justifiably concerned that remand to the Board for further

---

[3] The "list of [Dean's] available files," which the Court referenced in its Opinion (at 46), is not a list of "files" or the SSISORT program that was used to perform the match process for the years at issue. That portion of the Board's decision was referring to a list of MEDPAR files (*i.e.*, the output of the match process), including MEDPAR files for fiscal year 1995. *See* Plaintiff's Statement of Material Facts ("Pl. Stmt.") ¶ 227; AR 1631. Those MEDPAR files reflect the *results* of the match process (*i.e.*, the Medicare patients that CMS identified through the match as having been entitled to SSI), but they do not show whether Dean's SSISORT program dropped all SSI records without Title II numbers.

7

evidentiary proceedings could potentially delay relief by years. In the interests of justice and fairness to the Plaintiff, the final disposition of this case should not be unnecessarily delayed further. Plaintiff has already been deprived for many years of the correct DSH payment to which it is entitled for services rendered in a period that began more than 15 years ago.

### D.    The Match Process Did Not Use Best Available Data.

Plaintiff requests that the Court revise its Memorandum Opinion and Order so as not to remand to the Secretary to provide a further explanation, if any, as to why he thinks social security numbers and other patient identifiers are not the best data available for the match process. Plaintiff respectfully submits that the Court erred in remanding without setting aside the Secretary's decision on this issue.

First, as discussed above, in cases in which the agency cannot sustain its decision based on substantial evidence in the record of a hearing required by statute, it is not appropriate for the reviewing court to remand for further explanation from the agency. *See* 5 U.S.C. § 706(2)(E); *Biloxi Regional Med. Ctr.*, 835 F.2d at 348-49 & n.13. Moreover, the Administrator's conclusion that CMS used the "best data available" in its match process is not supported by substantial evidence in the record.

Indeed, the undisputed record evidence leaves no room for doubt that individuals' own social security numbers are better, more reliable patient identifiers than the Title II numbers and HIC numbers that CMS used in its match process. As the Board found, CMS' own employee, Dean, admitted that "matching a SSN against a SSN would 'of course' be a better match 'in an ideal world'" and the agency itself uses social security

8

numbers in other match programs.[4]  PRRB Dec. at 22 (quoting Dean); *see also* Mem. Op. at 46, 48.

Moreover, the undisputed record evidence also established that the social security numbers not only were the *best data*, but also were readily *available* to CMS.  *See* PRRB Dec. at 22; Mem. Op. 47-48.  Accordingly, Administrator's decision in this regard must be "set aside" in accordance with the plain language of section 706(2)(E) of the APA. *See Biloxi Regional Med. Ctr.*, 835 F.2d at 349 n.13, 350-54; *see also Morall v. DEA*, 412. F.3d 165, 167 (D.C. Cir. 2005).

Second, even if this issue were reviewed under the arbitrary and capricious standard of review as applied to an agency rulemaking pursuant to section 706(2)(A) of the APA, the agency still should not be given another bite at the apple on the question whether social security numbers and other alternative patient identifiers would yield better, more reliable match results than the identifiers that CMS used in its match process. Where that kind of remand occurs, it is because the agency has raised some legitimate concern that there might be a legally sufficient explanation for the agency's chosen course.  In *County of Los Angeles*, for example, the agency articulated a rationale for using arguably obsolete data and defended that choice with an affidavit from an agency official who had evaluated the more current data at the relevant time and concluded that it

---

[4] Additionally, neither the Administrator's decision in this case nor the 2005 Federal Register preamble cite any evidence either in the record of this case or in the record of that rulemaking supporting the statement that individuals' own social security numbers are not individual-unique identifiers.  Accordingly, to the extent that the Administrator purported to make a finding on this point, it is unsupported by substantial evidence in the record and must be set aside under section 706(2)(E) of the APA. Further, as discussed in footnote 6 below, Congress has established that it is the policy of the United States to require the use social security numbers as individual-unique identifiers in the administration of several Federal and State programs.

was incomplete and unreliable. 192 F.3d at 1021-22. The Court of Appeals identified several inconsistencies with that position, but left it to the Secretary to try to clarify those issues in the first instance before finally declaring it arbitrary and capricious. *Id*. at 1023.

This is not such a case. The Secretary not only failed to offer an explanation supported by record evidence for his failure to use social security numbers, but his witnesses affirmatively testified that those numbers were the *best* data and that they were *available* to the agency, and, indeed, the Secretary himself announced in the *Federal Register* over 20 years ago that he intended to use them in the match process used to calculate the SSI ratios.[5] Thus, in view of the record here, no remand for further discussion on that point is either necessary or appropriate. *See Checkosky v. Securities and Exchange Commission*, 23 F.3d at 464 (Silberman, J., writing separately) (reviewing court should vacate the agency decision if "the agency's explanation for its action is so crippled as to be unlawful").

Accordingly, the Court should vacate the Administrator's decision finding that CMS used the best data available in its match process and instruct the Secretary to run the

---

[5] The Court may also take judicial notice that Congress has required the Social Security Administration to assign social security numbers to individuals for purposes of administering the massive Federal Social Security program, 42 U.S.C. § 405(c)(2)(B), and has pronounced the policy of the United States for Federal and State governments to use these numbers in the administration several public programs and functions, such as the issuance of driver's licenses, motor vehicle registration, and birth certificates, *id*. § 405(c)(2)(C), and has authorized the Internal Revenue Service to use these numbers in the administration of the Federal income tax. *See* 26 U.S.C. § 6109(d). In short, Congress has established as a matter of Federal policy that social security numbers are reliable individual-unique identifiers, and nothing in the record of this case, in the Administrator's decision or in the 2005 Federal Register preamble commentary cited in the Administrator's decision supports the Administrator's unsubstantiated assertion that social security numbers are not individual-unique identifiers, let alone that they are not better data from that standpoint than the admittedly flawed HIC numbers that the Secretary chose to use.

matches on remand by primarily using individuals' own social security numbers and, secondarily, other patient identifiers (such as name and date of birth).

      E.      **Plaintiff Is Entitled To Payment of Additional DSH Amounts Plus Interest.**

Plaintiff requests that the Court amend its Order to (1) require the Secretary to pay Plaintiff the additional DSH amounts due as a result of corrections to the calculation of the SSI fraction as required on remand and (2) pay Plaintiff interest on those amounts calculated in accordance with 42 U.S.C. § 1395oo(f)(2). Correction of the calculation of the SSI fractions, without prompt payment of the additional DSH amounts due upon application of the corrected fractions, does not provide Plaintiff with redress of its injury. Plaintiff proposed and is entitled to an order directing the Secretary to pay the additional sums due as result of the required correction of errors in the Secretary's calculation of the SSI fractions for the periods at issue.

Additionally, Plaintiff is entitled to interest on the additional DSH payments due on remand. 42 U.S.C. § 1395oo(f)(2). Plaintiff is a prevailing party in this action, for purposes of section 1395oo(f)(2), because this action was a necessary, catalytic impetus for the relief Plaintiff sought from errors in the Secretary's original calculations of the SSI fractions. *See Tucson Med. Ctr. v. Sullivan*, 947 F.2d 971, 982 (D.C. Cir. 1991); *S.C. Management v. Leavitt*, No. 05-12 (CDP), 2005 WL 3263279 (E.D.Mo. Dec. 1, 2005). Accordingly, Plaintiff requests that the Court amend its Order of March 31, 2008 so as to direct the Secretary to pay Plaintiff the additional DSH payments due as result of further proceedings required on remand, plus interest calculated in accordance with section 1395oo(f)(2), as Plaintiff requested in the Complaint and in its proposed order.

      F.      **Retention of Jurisdiction and Remand Instructions**

11

Plaintiff requests that the Court amend its order so as to (1) retain jurisdiction while the Secretary implements further proceedings on remand, (2) explicitly direct the Secretary to complete proceedings on remand within a reasonable period, and (3) require the Secretary to afford Plaintiff some reasonable means of assuring that the SSI fractions for the 1993-1996 periods at issue are recalculated correctly in accordance with the Court's Memorandum Opinion and Order.

As it stands now, the Court's Order does not set any sort of timetable for the Secretary to correct errors in the SSI fractions for the periods at issue, and there is no clear avenue for redress in the event that the Secretary delays implementation of the remand Order (particularly if the matter is mired for years in further unnecessary evidentiary proceedings before the Board, which lacks the power or ability to compel discovery from the Secretary or CMS). Moreover, Plaintiff will have to either accept the Secretary's word that the remand Order has been implemented properly or pursue a further order from this Court on Counts Two and Three of the Complaint compelling production of the SSI records for all of the hospital's Medicare patients so that Plaintiff will have some means of verifying the correct SSI ratios for the years at issue. This does not provide much in the way of meaningful relief to Plaintiff as the prevailing party in this protracted action covering errors and omissions, some which were discovered by the agency more than a decade ago, in payment determinations for a period that began more than 15 years ago.

Although we are mindful of the Court's reluctance to interfere with the agency proceedings in the implementation of the Court's Opinion and Order, we respectfully submit that the Court's failure to issue any remand instructions at all is neither warranted

by the record nor fair to Plaintiff.  The Secretary declined to join issue on the question of remedy in briefing the motions for summary judgment, and accordingly there was no careful airing of these important issues in the briefing and argument, and certainly no opportunity for Plaintiff to hear and respond to either the Court's or the Government's concerns.

For those reasons, Plaintiff requests an opportunity to fully brief and argue the question of remedy or, at the very least, that the Court revisit the issue and issue some reasonable remand instructions that are sufficient to assure that its Order is carried out expeditiously and faithfully.  While a reviewing court in some cases may not "retain jurisdiction to devise a specific remedy for the Secretary to follow," Mem. Op. 65 (internal quotes and citation omitted), it is also true that "federal courts regularly retain jurisdiction until a federal agency has complied with its legal obligations, and have the authority to compel regular process reports in the meantime." *Cobell v. Norton*, 240 F.3d 1081, 1109 (D.C. Cir. 2001) (affirming the district court's order retaining jurisdiction in APA action to ensure defendant agencies' compliance with court orders and directing the agencies to file quarterly status reports setting forth actions taking to rectify breaches in view of the agencies' prior history of delay, loss of documents, and unwillingness to act); *American Iron and Steel Institute v. OSHA*, 939 F.2d 975, 1010 (D.C. Cir. 1991) (retaining jurisdiction and stating that the defendant agency is expected to complete further proceedings on remand expeditiously); *Environmental Defense Fund v. Environmental Protection Agency*, 852 F.2d 1316, 1331 (D.C. Cir. 1988) (retaining jurisdiction and imposing a schedule for remand proceedings in view of the agency's history of delay); *Chen v. General Accounting Office*, 821 F.2d 732, 741 (D.C. Cir. 1987)

13

(retaining jurisdiction while vacating the agency's decision and remanding for further proceedings). As the Court of Appeals explained in *Cobell*, federal courts have broad equitable powers to fashion "any appropriate relief" to cure transgressions of a federal right where a federal right of action exists under the APA. 240 F.3d at 1108.

The factors that supported the relief granted in *Cobell* are also present here.[6] CMS first discovered one problem with its calculation of the SSI fraction for years at issue here more than a decade ago. That error (*i.e.*, omission of inactive records) remains uncorrected today for the 1993 and 1994 years at issue, and even now the agency has taken no steps to cure other deficiencies with the patient identifiers used in its match process or the early cut-off for its matches. *See* Mot. Hr'g Tr. at 57-59. Regarding the omission of stale records prior to 1995, no one at CMS admits to remembering why the agency decided not to correct the prior SSI fractions (PRRB Dec. at 34-35), and CMS now says it has lost special MEDPAR records it created many years ago that measured the impact of the omission of inactive records by year, by hospital and by patient stay for years prior to 1995. PRRB Dec. at 25. Moreover, the agency's conduct of this litigation has further delayed by years the correction of errors for the periods at issue. It took Plaintiff two years, for instance, to obtain in 2003 the patient-level detail data for the days that CMS included in the SSI fraction for 1995 after the Board issued a subpoena compelling production of that data in 2000 and the agency filed the Thomas declaration

---

[6] Plaintiff recognizes that some aspects of the many *Cobell* cases turn on Government breaches of fiduciary duty and that the Court has declined to find that such obligations were owed here. Mem. Op. at 25 n.23. This particular portion of *Cobell*, however, is directed to courts' inherent power to effectuate their decisions, including on matters relating to agency compliance with obligations arising under the APA.

14

with the Court in 2001 stating that CMS no longer had the data it used to calculate the SSI fraction for the 1995 year at issue.  Pl. Stmt. ¶¶ 219-229.

Plaintiff, therefore, requests that the Court direct the Secretary to provide some appropriate means by which Plaintiff can verify that CMS has calculated revised SSI ratios properly in accordance with the Court's Opinion and Order.  In view of the record in this case, Plaintiff cannot reasonably be expected to take it on the Secretary's word alone that the agency has on remand correctly implemented the Court's Order requiring correction of the SSI fractions.  The record shows that the agency's words have not always fully described its action.  In 1986, for example, the agency said in preamble commentary on its DSH rule that the match process would be based on social security numbers.  In his briefs in this Court, the Secretary argued that the 1986 rule did not actually mean that the agency would match records based on individuals' own social security numbers, just "a" social security number; and, the Secretary explains, HIC numbers and Title II numbers usually (but not always) consist of somebody's social security number with an alpha-numeric beneficiary identification code tacked on to the end.[7]  Def. Br. at 43-44.

---

[7]  Similarly, in 1995, within weeks after the agency executed a "one time" deal with one hospital that had gotten close to discovering the problem with the SSI data, the agency's lead Policy analyst for DSH testified in a deposition that the SSI data were assumed to be correct and there were no problems with the data.  Pl. Reply Br. at 17-19 & nn.18, 20.  Of course, by then, the agency had known had least since 1993 that there was a problem with the data it was using its calculation.  Mem. Op. at 42.  Moreover, during this very same period, the agency published preamble commentary in the Federal Register telling hospitals, incorrectly, that they could not obtain the patient-level detail data they would need to verify the accuracy of the SSI fractions because the calculations were performed by SSA and the SSA data were "not released to HCFA."  60 Fed. Reg. 45778, 45812 (Sept, 1, 1995).

15

For all of these reasons, Plaintiff requests that the Court retain jurisdiction over this matter, set a reasonable timetable for the Secretary to implement corrections on remand or at least report progress to the Court, and direct the Secretary to provide Plaintiff with some reasonable means of reaching assurance that the errors in the Secretary's prior calculations have been properly corrected in accordance with Court's order. The Court may, for instance, instruct the Secretary on remand to permit Plaintiff to examine the corrected program used by SSA to compile the SSI data furnished to CMS and the corrected match program and patient identifiers used by CMS to run against that SSI data. Absent such a requirement, though, Plaintiff may need to litigate Counts Two and Three in order to obtain the SSI records for all its Medicare patients in order to have some basis for verifying whether the Secretary has properly implemented the Court's remand order.

Plaintiff stands ready as well to further brief the remedies issue for the Court or appear for further argument so that the Court's decision on this issue can be fully informed by the parties' positions.

## II.  Plaintiff's Status Report on Counts Two and Three

In the proposed briefing schedule filed with the Court on December 18, 2006, the parties agreed to a schedule that addressed Count One only "as that count will be dispositive if Plaintiff's motion is granted."  The Court's Memorandum Opinion and Order granted Plaintiff's motion in part, but the Court declined to adopt Plaintiff's proposed order on its motion or otherwise to entertain any reasonable instructions governing the remand.  Most significantly, with respect to possible further proceedings on Counts Two and Three, the Order dated March 31, 2008 provides Plaintiff with no

means of assuring itself that the Secretary has properly implemented the Court's remand order in accordance with the Court's Opinion.   As set forth above, Plaintiff's motion to amend the Court's Opinion and Order requests that the Court revise the remand order so as to require the Secretary on remand to provide Plaintiff with some reasonable means of assuring itself that the Secretary has properly complied with the Court's final Opinion and Order.   Should the Court grant Plaintiff's motion, further proceedings on Counts Two and Three would likely be unnecessary.   On the other hand, if the Court denies Plaintiff's motion, then Plaintiff may have no alternative but to litigate Counts Two and Three in order to obtain the SSI records for all Medicare patients treated during the 1993-1996 period at issue so that Plaintiff will have some means of verifying whether, and the extent to which, the Secretary has properly implemented the Court's Order and remand instructions.   Accordingly, at this juncture, Plaintiff requests that proceedings on Counts Two and Three be held in abeyance pending the Court's decision on Plaintiff's motion to amend the Opinion and Order dated March 31, 2008 and that the parties be directed to meet and confer and file a further status report with respect to Counts Two and Three within 14 calendar days after the Court issues a decision on Plaintiff's motion.

## **Conclusion**

For the foregoing reasons, Plaintiff requests that the Court amend the Memorandum Opinion and Order dated March 31, 2008.   A proposed order accompanies this motion.

        Respectfully submitted,


        /s/ Christopher L. Keough
        Christopher L. Keough
          DC Bar No. 436567
        John M. Faust
          DC Bar No. 433553
        Stephanie A. Webster
          DC Bar No. 479524
        VINSON & ELKINS L.L.P.
        1455 Pennsylvania Avenue, N.W.
        Suite 600
        Washington, D.C.  20004-1008
        (202) 639-6500 (phone)
        (202) 639-6604 (fax)

        Counsel for Plaintiff

Dated:  April 14, 2008

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April, 2008, I electronically filed the foregoing Plaintiff's Motion to Amend the Court's Opinion and Order on Count One and Status Report on Counts Two and Three using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record for the Defendants:

>BRIAN G. KENNEDY
>LISA A. OLSON
>U.S. Department of Justice
>20 Massachusetts Avenue, N.W.
>Room 7300
>Washington, D.C. 20530

>/s/ Christopher L. Keough
>Christopher L. Keough

756885_1.DOC