UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAYSTATE MEDICAL CENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:06-cv-01263 (JDB) |
| | ) |
| MICHAEL O. LEAVITT, et al., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**DEFENDANTS' PARTIAL OPPOSITION TO PLAINTIFF'S MOTION
TO AMEND THE COURT'S OPINION AND ORDER ON COUNT ONE**

BACKGROUND

On March 31, 2008, this Court issued a Memorandum Opinion and an Order granting in part and denying in part the parties' respective motions for summary judgment on Count One of the Plaintiff hospital's Complaint. The Court rejected certain aspects of Plaintiff's challenge to the Secretary's final decision sustaining the calculation by the Centers for Medicare & Medicaid Services ("CMS") of the "Supplemental Security Income (SSI) fraction" component of the Medicare payment adjustment for hospitals that serve a significantly disproportionate share ("DSH") of low income patients. March 31, 2008 Memorandum Opinion ("Mem. Op.") at 27-33, 59-63. The Court further held that, contrary to the Secretary's final decision, other aspects of the agency's SSI fraction calculation methodology improperly failed to use the "best available data." Id. at 33-44. The Court also remanded one particular matter for further evidentiary proceedings, in addition to remanding a second specific matter for further explanation. Id. at 44-49. Moreover, the Court rejected the extraordinarily detailed remedy proposed by Plaintiff; instead, the Court remanded the final agency decision to the Secretary for further proceedings

consistent with the Court's opinion, and ordered Plaintiff to file a status report regarding Counts Two and Three of its Complaint. Id. at 63-65.

On April 14, 2008, the hospital filed Plaintiff's Motion to Amend the Court's Opinion and Order on Count One and Status Report on Counts Two and Three ("Plaintiff's Motion"). Plaintiff's Motion challenges the remedy ordered by this Court, and requests certain alternative relief. Plaintiff's Motion at 1-3.

Previously, in support of its summary judgment motion, Plaintiff had "submitted a broad and open-ended 11-paragraph proposed order that would direct the agency to take numerous actions on remand." Mem. Op. at 64. Plaintiff's original proposed remedy would have dictated, in elaborate detail, CMS's methodology for recalculating the SSI fractions at issue, but the Court concluded that it "is not empowered . . . to enter this type of relief in an APA case." Id. at 64-65. The Court explained that "'settled principles of administrative law'" foreclose an order "devis[ing] a specific remedy for the Secretary to follow.'" Id. at 65 (citations omitted).

In the hope of reaching a mutually acceptable resolution to Plaintiff's Motion to Amend, the Secretary raised the prospect of pursuing an agreed remedy and the hospital was amenable to such discussions.[1] With Plaintiff's assent, the Secretary was then allowed three 30-day enlargements of the time for responding to Plaintiff's Motion to Amend so that the parties could discuss a potential negotiated remedy for consideration by the Court. However, although the parties met and exchanged numerous telephone calls and written communications, they were

---

[1] The Secretary made clear to Plaintiff that any agreed remedy could require the approval of the Court, and such remedy would apply only if recalculation of the disputed SSI fractions were required under a final, non-appealable judgment in this case.

unable to devise a remedy that was mutually agreeable.[2]

ARGUMENT

The Secretary concurs in some, but opposes other, of the various remedial requests in Plaintiff's Motion to Amend. On the one hand, the Secretary assents to Plaintiff's request that the final agency decision be vacated and remanded for recalculation of the disputed SSI fractions and payment of additional DSH monies owing plus litigation interest. See Plaintiff's Motion at 2-3. As for Plaintiff's contention that the particular remands ordered for additional evidentiary proceedings and for further explanation are unnecessary, see id. at 2, the Secretary agrees that these specific remands are unnecessary, albeit for very different reasons than those advanced by the hospital. Put simply, the two remands in question would address the extant administrative record for Plaintiff's original SSI fractions, whereas the Secretary's recalculation of the disputed SSI fractions would instead be based on a new data source, updated data files, and a new data matching process that respond to the problems underlying the two remand orders. See infra pp. 6 n.3 and 7 n.4 (comparison of the parties' views as to why the specific remands for further evidentiary proceedings and for additional explanation, respectively, are unnecessary).

On the other hand, the Secretary opposes Plaintiff's renewed requests for the imposition of a timetable and specific instructions for the recalculation of Plaintiff's SSI fractions, and for

---

[2] There is no basis for Plaintiff's assertion that the Secretary's last "substantive communication" regarding a potential agreed remedy came on May 22, 2008. See Plaintiff's Status Report [43] at ¶5. On the contrary, the Secretary's substantive communications with Plaintiff about a potential negotiated remedy ended only a short while ago. Indeed, if May 22, 2008, had marked the end of the parties' substantive discussions, it would be difficult to understand why the hospital later joined the parties' May 27, 2008 joint motion for a second enlargement (for Defendants' response to Plaintiff's Motion to Amend) and then agreed to the Secretary's June 27, 2008 unopposed motion for a third enlargement (also for Defendants' response to Plaintiff's Motion to Amend).

the Court to retain jurisdiction to enforce such timetable and instructions. See Plaintiff's Motion at 11-17. Despite some changes in formulation and detail, Plaintiff sought essentially the same relief in support of its summary judgment motion and the hospital has provided no basis for the Court to reconsider its prior rejection of these particular remedial requests. Furthermore, specific "recalculation instructions" are unnecessary because the Court's opinion has already identified "'the corrected legal standards'" for recalculating the SSI fractions at issue, Mem. Op. at 65 (citations omitted), and, as shown below, the Secretary understands how to recalculate the disputed SSI fractions consistently with the Court's opinion and certain changed circumstances. See infra pp. 4-8. Similarly, a timetable for the remand process is unnecessary because, by expediting the recalculation of Plaintiff's SSI fractions and the payment of additional Medicare DSH monies, the agency can limit the amount of litigation interest that is owed to the hospital and has a strong incentive to do so. See 42 U.S.C. § 1395oo(f)(2). And, not only is there is no reason for the Court to retain jurisdiction over the recalculation and payment process, but subject matter jurisdiction over those matters would also be lacking once the final agency decision at issue is vacated. See 42 U.S.C. § 1395oo(f)(1).

I.  On Remand, the Secretary Should Be Required Only to Recalculate Plaintiff's SSI Fractions in Accordance with the Court's Opinion and Certain Changed Circumstances, and Make Payment of Additional DSH Monies Owing Plus Litigation Interest

As the Court concluded, the Secretary's responsibility on remand would be to recalculate Plaintiff's SSI fractions through a methodology that is "'consistent with the corrected legal standards.'" Mem. Op. at 65 (citations omitted). Taking into account certain circumstances that have changed since Plaintiff's SSI fractions were calculated originally, the following recalculation methodology would comport with the Court's opinion.

First, the Court held that, for each of Plaintiff's fiscal years 1993 through 1996 ("the years at issue"), the Secretary should have used the later of the two SSI eligibility data tapes that were furnished by the Social Security Administration ("SSA"). Mem. Op. at 37-40. However, neither CMS nor SSA has been able to locate any of the SSI eligibility data tapes that were provided to CMS by SSA contemporaneously with each specific year at issue. Accordingly, in recalculating Plaintiff's SSI fraction for each year at issue, CMS would have to use an updated SSI eligibility data tape furnished by SSA. These updated SSI eligibility data tapes would be compiled long after the fiscal years at issue, which will allow retroactive changes in SSI eligibility status to be accounted for in CMS's new data matching process.

Second, the Court held that the SSI eligibility data tapes used in the original calculation of Plaintiff's SSI fractions improperly omitted both "stale records" (i.e., records that SSA eliminated from the SSI eligibility tape upon the death of the beneficiary) and "forced pay records" (i.e., records for individuals who received "manual" SSI payments, instead of "automated" payments during the year at issue). Mem. Op. at 40-44. Thus, in recalculating Plaintiff's SSI fractions, stale records and forced pay records would be included in the updated SSI eligibility data tapes furnished by SSA for each year at issue.

Third, the Court found that it is unclear whether specific SSI eligibility records that lacked "Title II numbers" were excluded from the original calculation process in which CMS matched Medicare Part A eligibility information from the Medicare Provider Analysis and Review ("MEDPAR") data file with SSI eligibility information from the data file that SSA furnished annually to CMS. Therefore, the Court ordered a remand for further evidentiary proceedings before the Provider Reimbursement Review Board ("PRRB") on this particular

issue. Mem. Op. at 44-46.

A remand for further evidentiary proceedings before the PRRB is not necessary. The scope of this particular remand order is limited to further evidentiary proceedings as to whether CMS's original matching process, used in calculating the SSI fractions at issue, excluded specific SSI eligibility records that lacked Title II numbers. Mem. Op. at 44-46. However, CMS's recalculation of Plaintiff's SSI fractions would be based on the updated SSI eligibility data tape furnished by SSA for each year at issue. In recalculating the disputed SSI fractions, SSI eligibility records that lacked Title II numbers, on the updated SSI eligibility data tapes furnished by SSA, would be accounted for in the process of matching Medicare Part A eligibility information (from the MEDPAR data file) with SSI eligibility information (from the updated data files furnished by SSA).[3]

Fourth, the Court determined that CMS's original match of "Health Insurance Claim Account Numbers (HICANs)" with Title II numbers does not seem to make use of the best available data because an individual could have more than one HICAN or Title II number, whereas each person should have only one Social Security Number ("SSN"). Yet, the Court found, the Secretary has not explained why CMS did not use SSNs in determining the SSI

---

[3] Plaintiff maintains that a remand for further evidentiary proceedings before the PRRB is unnecessary because the extant administrative record establishes that the "SSISORT program" used in the original matching process is no longer available, and thus it cannot be determined definitively whether specific SSI eligibility records that lacked Title II numbers were excluded from the original matching process. Plaintiff's Motion at 6-8. As explained in the immediately preceding text, the Secretary agrees that a remand for further evidentiary proceedings is unnecessary, albeit for very different reasons: CMS's new matching process would make use of updated SSI eligibility data files that are not part of the extant record, and SSI eligibility records that lacked Title II numbers (on the updated SSI eligibility data tapes furnished by SSA) would be accounted for in the new data matching process.

fractions at issue, even though the agency has used SSNs in other contexts (e.g., in the Medicare Enrollment Database, and in identifying Medicare beneficiaries in nursing facilities who receive SSI benefits (in order to implement legally required reductions in SSI payments)).  Accordingly, the Court ordered a remand to the Secretary to articulate a reasoned explanation, if there is one, for why SSNs and other patient identifiers (e.g., the patient's name) are not the best available data for purposes of matching Medicare beneficiaries with SSI recipients.  Mem. Op. at 44, 46-49.

A remand for further explanation is not necessary because, in recalculating the disputed SSI fractions, the agency would use SSNs in the data matching process.[4]  More specifically, CMS's new matching process would make use of the Medicare Enrollment Database ("EDB"), which will facilitate the agency's "cross-walk" between the SSN and the HICANs for an individual.  In one step, the individual's SSN (contained in the updated SSI eligibility data file) would be matched against the SSNs in the EDB, and cross-walked to find HICANs associated with the individual's SSN.  In a separate step, all HICANs that were cross-walked to an individual's SSN in the EDB would be matched against the HICANs in the Medicare claims data file (i.e., the repository of Medicare claims information for the Plaintiff hospital and other

---

[4] Plaintiff contends that a remand for further explanation is unnecessary because the record evidence allegedly establishes that SSNs were available to CMS during the original matching process, and SSNs were then the best available data for purposes of matching Medicare beneficiaries with SSI recipients.  Plaintiff's Motion to Amend at 8-11.  As explained in the ensuing text, the Secretary agrees that a remand for further explanation is unnecessary, but for the very different reason that the recalculation of Plaintiff's SSI fractions would be based on, in addition to the updated SSI eligibility data files, a new data source (i.e., the Medicare Enrollment Database) that will enable CMS to make use of SSNs in a new data matching process.

providers).[5]

Fifth, after CMS has recalculated Plaintiff's SSI fractions, the agency would then pay the hospital any and all additional DSH monies owing plus accrued interest under 42 U.S.C. § 1395oo(f)(2). Final payment would be made through a revised notice of program reimbursement for each year at issue, which would be subject to administrative and judicial review. See 42 C.F.R. §§ 405.1801(a)(1), 405.1803, 405.1889.

II. Plaintiff Has Not Provided Any Basis for Reconsideration of the Court's Prior Rejection of the Hospital's Requests for a Timetable and Specific Instructions for Recalculation of Plaintiff's SSI Fractions, and for the Court to Retain Jurisdiction to Enforce Such Timetable and Instructions

"Rule 59(e) motions need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Anyanwutaku v. Moore, 151 F.3d 1053, 1057-58 (D.C. Cir. 1998). Plaintiff does not argue that the Court should amend its ruling on the basis of an intervening change in law or the availability of new evidence. Thus, the hospital must instead show a pressing need to correct a clear error or prevent manifest injustice. See Mobley v. Continent Casualty Co., 405 F. Supp. 2d 42, 45 (D.D.C. 2005); Oceana, Inc. v. Evans, 389 F. Supp. 2d 4, 8 (D.D.C. 2005).

It is settled that "[a] Rule 59(e) motion is neither a vehicle for litigants to re-argue facts and theories upon which the reviewing court has already ruled, . . . nor an opportunity for

---

[5] Of course, the forgoing statements in the text about the EDB do not represent a full description of the new data matching process that CMS would use in recalculating Plaintiff's SSI fractions. Also, if the EDB included no SSN for an individual, CMS would have to make use of other patient identifiers in order to ensure that the individual's records were fully accounted for in the new data matching process.

litigants to present theories or arguments that could have been advanced earlier, but were not . . . ." Mobley, 405 F. Supp. 2d at 45-46; Piper v. U.S. Dep't of Justice, 312 F. Supp. 2d 17, 21 (D.D.C. 2004) (same). Thus, "Rule 59 was not intended to allow a second bite at the apple." Oceana, 389 F. Supp. 2d at 8. Here, by its request for a timetable and specific instructions for the recalculation of the disputed SSI fractions and for the Court to retain jurisdiction to enforce such timetable and instructions, Plaintiff plainly seeks nothing but "a second bite at the apple." Id.

Comparison of Plaintiff's original remedial request (in support of its summary judgment motion) and the hospital's pending request shows that, despite some changes in formulation and detail, Plaintiff's two remedial requests are essentially the same. However, the Court rejected Plaintiff's original remedial request as contrary to "'settled principles of administrative law.'" Mem. Op. at 65 (citations omitted). Since "plaintiff merely raises arguments that the court has already considered and rejected," the hospital's renewed request for a timetable and specific recalculation instructions and for the Court to retain jurisdiction for enforcement purposes must be denied. Rann v. Chao, 209 F. Supp. 2d 75, 83 (D.D.C. 2002).

In its original remedial request, Plaintiff asked the Court to require completion of the entire remand process, from preliminary data file work by CMS and SSA through final payment to the hospital, within 180 days. Proposed Order [15-2] at 1. Plaintiff now seeks imposition of "a timetable" for completion of the remand process. Plaintiff's Motion to Amend at 11. But the hospital has not even suggested, much less established, that "'settled principles of administrative law'" would somehow countenance an unspecified timetable, when the Court has already rejected the proffered 180-day deadline sought in Plaintiff's original remedial request. Mem. Op. at 65 (citations omitted).

Similarly, Plaintiff originally asked the Court to require the Secretary to implement the entire remand through twelve enumerated, highly detailed procedural steps. Proposed Order [15-2] at 1-3, ¶¶ i - xii). Plaintiff now asks the Court to "issue reasonable instructions for the recalculations to be performed on remand." Plaintiff's Motion to Amend at 2. However, the hospital has provided no basis for the issuance of "recalculation instructions" when the Court's opinion has already identified "'the corrected legal standards.'" Mem. Op. at 65 (citations omitted). Furthermore, the Secretary understands how to recalculate the disputed SSI fractions in a manner consistent with the Court's opinion and certain changed circumstances. See supra pp. 4-8.

Likewise, Plaintiff initially requested that the Court retain jurisdiction and require the filing of status reports every sixty days until the remand process is completed. Proposed Order [15-2] at 4. Now, in reiterating its request that the Court retain jurisdiction in order to enforce the hospital's requested timetable and recalculation instructions, Plaintiff would require the filing of a status report "on _____, 2008." Proposed Order [15-2] at 4. But the difference between requiring status reports every sixty days versus an unspecified, judicially imposed date is a trifle that certainly does not warrant reconsideration in view of the fact that the Court has already considered and rejected plaintiffs' initial request for status reports.

Plaintiff's repetitious requests for a timetable and recalculation instructions, and for the Court to retain jurisdiction to enforce both, also overlook central provisions of the Medicare statute. For one, a timetable for the remand process is unnecessary because, by expediting the recalculation of Plaintiff's SSI fractions and the payment of additional Medicare DSH monies, the agency can limit the amount of litigation interest that is owed to the hospital. See 42 U.S.C.

§ 1395oo(f)(2).

Finally, the Court's subject matter jurisdiction obtains solely under 42 U.S.C. § 1395oo(f)(1), which provides for "judicial review of Medicare reimbursement decisions . . . under APA standards." Mem. Op. at 25 (citations omitted). As noted previously, the Secretary concurs in Plaintiff's request that the final agency decision at issue be vacated. See Plaintiff's Motion at 2. However, once the Secretary's final decision is vacated, the jurisdictional underpinning of Plaintiff's challenge to the calculation of its SSI fractions would be eliminated, see 42 U.S.C. § 1395oo(f)(1), and thus there would be no basis for the Court to retain jurisdiction over the recalculation and payment process.[6]

---

[6] In addition to the points above addressing plaintiff's motion to amend, there is one point in the Court's opinion that the Court may wish to consider amending. The Court indicated (at 41) that CMS and SSA are "two divisions of a single agency, the Department of Health and Human Services." While that was formerly true, effective March 31, 1995, the Social Security Administration became an independent agency apart from the Department of Health and Human Services. 42 U.S.C. § 901(a).

## CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Amend the Court's Opinion and Order on Count One should be granted in part and denied in part. A proposed Order is attached.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

SHEILA M. LIEBER
Deputy Director

**/s/ Lisa A. Olson**
BRIAN G. KENNEDY
LISA A. OLSON (D.C. Bar #38266)
U.S. Department of Justice
20 Mass. Ave., N.W., Room 7300
Washington, D.C. 20530
Telephone: (202) 514-5633
Telefacsimile: (202) 616-8470
E-mail: lisa.olson@usdoj.gov

OF COUNSEL:

THOMAS R. BARKER
Acting General Counsel

JANICE L. HOFFMAN
Associate General Counsel

MARK D. POLSTON
Deputy Associate General
    Counsel for Litigation

ROBERT W. BALDERSTON
Attorney

U.S. Department of Health
    and Human Services

Dated: July 30, 2008                    Counsel for Defendants