UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BAYSTATE MEDICAL CENTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-1263 (JDB) |
| ) | |
| MICHAEL O. LEAVITT, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
TO AMEND THE COURT'S OPINION AND ORDER ON COUNT ONE**

**INTRODUCTION**

In their partial opposition to plaintiff's motion to amend the Court's Memorandum Opinion and Order, defendants agree that the Court should grant the plaintiff's motion in most respects. Defendants agree that Secretary Leavitt's final decision should be vacated and that the SSI fractions at issue should be recalculated.[1] The Secretary says that his agency knows how to perform the recalculations consistent with the Court's decision in this case (Dft. Opp. at 4, 10), and he agrees that the agency should be required to pay the hospital the additional DSH amounts due as a result of the recalculations, plus interest. *Id*. at 3.

Remaining at stake are just two issues -- but both of them are critical to bringing about an end to this long-running dispute. The first is whether the Secretary will be required to perform the recalculations with sufficient transparency to facilitate review and accountability, or whether the Secretary will be permitted to "fix" the problems in secret, and to his own unreviewable satisfaction. The second is whether the Court should

---

[1] *See* Defendants' Partial Opposition ("Dft. Opp.") at 3.

continue to play an appropriately limited role to ensure compliance with its own rulings in an environment where, otherwise, the mistakes that caused this litigation can be repeated without detection or, if detected, their correction can be unreasonably delayed.

The Secretary's position on these issues invites continuing protracted disputes about the proper DSH payment due the hospital for the services it furnished to Medicare patients 12-16 years ago. The Secretary concedes that the recalculations would be subject to review (Dft. Opp. at 8), but he opposes an order that would require his agency to provide Baystate with sufficient information to enable that review either by the hospital, the Secretary's review board (the PRRB), or the Court, for that matter. The Secretary also opposes the hospital's request that the Court retain jurisdiction over this case while the agency completes the recalculations on remand. He contends, incorrectly and without citation to contrary precedent in this circuit, that the Court may not retain jurisdiction once it has set aside an agency final decision upon review (*id*. at 11).

Although he neglects to point this out in his brief, the reason for the Secretary's fierce resistance to even the bare minimum of judicial oversight that Baystate has requested is now plain: The Secretary has changed the rules. As of August 21, 2008, the Secretary has decreed by regulation that the discovery rights that produced much of the evidence that condemned his SSI calculations before the PRRB and in this Court *will no longer be permitted*. If the Secretary can just manage to get out of this Court with an open-ended remand, his agency knows that Baystate is unlikely ever to get discovery in a an appeal before the PRRB as to the facts necessary to verify that CMS has appropriately recalculated its SSI fraction for the years at issue and to obtain effective review of that recalculation. The hundreds of other hospitals with pending PRRB appeals on this issue

will be prejudiced as well, only their situation is worse because, unlike Baystate, they never got the glimpse that Baystate did into the morass that has been CMS's process for calculating the SSI fraction over the years.

If the Secretary is successful in this stratagem, Baystate may have no choice but to move forward in this Court with Counts Two and Three, which together seek all of the Medicare patients' SSI data that the hospital was wrongfully denied before the agency changed its discovery rules. Only then will Baystate have some means (albeit imperfect) of evaluating a CMS recalculation. And, if that data reveals even more problems than either Baystate or the Court has seen to date, then it may be appropriate to litigate those matters as well.

The hospital, however, very much hopes not to have to go down that path. Baystate would much prefer to bring a prompt and satisfactory end to this seemingly interminable dispute. Toward that end, the hospital requests only that the Court retain jurisdiction and order the Secretary to provide the hospital with sufficient information about the recalculations to enable review of those calculations under the best data available standard established by the Court's decision in this case. Without transparency, the remand almost certainly will not resolve this dispute, certainly not anytime soon. The Secretary's agency has always kept its calculations of the SSI fractions under cover, and as result, the agency has been underpaying DSH for the past 21 years. Even when the agency discovered errors in its calculations at least as early as 1993 (*see* Opinion at 42), it did not disclose those errors to affected hospitals, nor did it fix all the errors in its calculations (not even prospectively), nor did it pay the hospitals retrospectively the

additional DSH amounts that were properly due them but were not paid to them as result of the agency's errors.

Having issued a careful and lengthy decision in this case, the Court should not leave the job unfinished and allow matters that could be addressed right now to fester at the agency level into even more litigation. As discussed below, the Court has the authority under circuit precedent to retain jurisdiction in this case while the Secretary recalculates the SSI fractions on remand. By retaining jurisdiction, the Court may require the Secretary to furnish sufficient information concerning its recalculations to ensure transparency. That, in and of itself, will almost certainly bring a sooner end to this dispute than if the Secretary is allowed to perform the recalculations in the dark. And, even if there remains some dispute as to whether the recalculations are consistent with the best data available standard, transparency in the calculations will enable effective review. Accordingly, the hospital respectfully requests that the Court both amend its order and retain jurisdiction over the case.

## ARGUMENT

I. **THE COURT SHOULD RETAIN JURISDICTION AND AMEND ITS ORDER TO ENSURE THAT THE SECRETARY'S RECALCULATIONS OF THE SSI FRACTIONS ARE SUFFICIENTLY TRANSPARENT TO FACILITATE REVIEW.**

As noted above, the Secretary concedes that CMS' recalculation of Baystate's SSI fractions would be subject to review. Dft. Opp. at 8. In order to enable meaningful review of those recalculations, of course, both the hospital and the reviewing court would need to know how the calculations were performed. But, that will not be possible unless this Court either retains jurisdiction over this case and orders the Secretary to provide Baystate with sufficient information to make its recalculations of the SSI fractions

transparent. The need to do so is especially pronounced because the Secretary recently amended his appeal regulations to effectively prevent such review from occurring through the administrative appeal process.

The Secretary amended his regulations governing appeals to the PRRB, effective as to all appeals pending on, or filed after, August 21, 2008. 73 Fed. Reg. 30190 (May 23, 2008). Under the amended regulations, a hospital like Baystate is precluded from obtaining discovery from the Secretary, CMS or any other Federal agency (like SSA), in an appeal to the PRRB, even an appeal as to determinations, like the calculation of the SSI fractions, that are made solely by CMS. *Id.* at 30218, 30220, 30223 (May 23, 2008) ("the discovery procedures in § 405.1821 and § 405.1853 will not apply to CMS, the Secretary (or any other component of HHS), or any other Federal agency"). Under these new regulations, an appeal for review of the recalculated SSI fractions would be a meaningless exercise because the hospital and the PRRB would be unable to compel the Secretary, CMS or SSA to produce relevant evidence concerning the recalculated fractions through the usual discovery procedures.[2]

Thus, unless the Court retains jurisdiction over this case and orders the Secretary to provide Baystate with sufficient information to make its recalculations of the SSI fractions transparent, neither the hospital nor the Court will have any way to know whether the Secretary has properly recalculated the SSI fractions in accordance with the

---

[2] It is doubtful that this aspect of the new regulations could withstand challenge. Nevertheless, the PRRB is bound by the Secretary's regulations. *See* 42 C.F.R. § 405.1867; 73 Fed. Reg. 30260.

Court's decision.[3]  And, while the hospital would have the right to appeal the revised SSI fractions, neither the PRRB nor a reviewing court would have any of the information needed to effectively review the recalculations.  In that event, Baystate would likely be compelled to seek relief from this Court either in the form of an order compelling disclosure of the information needed to facilitate review of the Secretary's recalculations or compelling production of the SSI entitlement data pursuant to Counts Two and Three of the Complaint filed in this case.

This alone is reason enough for the Court to retain jurisdiction over this case and to grant Baystate's request for an order expressly requiring the Secretary to furnish the hospital with sufficient information to assure itself that CMS has correctly and properly implemented the Court's decision in this case.  But, if more is needed, the point is underscored by the Secretary's incomplete description of the "recalculation methodology" that he says "would comport with the Court's opinion."  *See* Dft. Opp. at 4-8.  That description would not provide Baystate with sufficient information to assure itself that the recalculations are consistent with the Court's best data available standard -- indeed, the little it does say suggests that this methodology would not fix the major errors in the prior calculations.

---

[3] It is unclear what, if any, detailed programmatic information concerning the recalculations of the SSI fractions would be produced by CMS pursuant to the Freedom of Information Act ("FOIA").  In any event, though, CMS typically takes several years to respond to FOIA requests, and the hospital almost certainly would not receive any responsive documents within the 180-day period in which it would have to file an appeal to the PRRB in order to contest the recalculated SSI fractions.  Thus, if the Court declines to retain jurisdiction or order the Secretary to furnish the hospital with the information it needs to assure itself that the Secretary's recalculations of the SSI fractions are consistent with the Court's decision, then the hospital may be compelled to proceed on Counts Two and Three of the Complaint in order to obtain all of the SSI records needed to determine the correct SSI fractions for the periods at issue.

To begin with, the methodology generally described in the Secretary's memorandum appears to be a hypothetical one that the Secretary believes "would comport with the Court's opinion." Dft. Opp. at 4-8. The Secretary's memorandum identifies some data that "would be included" in such a methodology, and provides only an admittedly incomplete description of some steps that CMS "would have to" perform to implement such a method. Opp. at 5-8 & n.5. Nothing in the memorandum states that CMS <u>will</u> employ that methodology, that it <u>will</u> use the data described in the memorandum, or that CMS <u>will</u> perform the steps discussed therein in recalculating the SSI fractions at issue in this case.[4] And, unless the Court retains jurisdiction and orders the Secretary to disclose the details of the recalculations actually performed, Baystate would have no way to know what methodology CMS actually employed, what data actually was included, and what steps actually were performed in recalculating its SSI fractions unless the Secretary is compelled to furnish that information to the hospital.

Moreover, even assuming *arguendo* that the Secretary's memorandum describes the methodology that CMS will employ in recalculating Baystate's SSI fractions, that description of the methodology is so incomplete that the hospital cannot possibly be assured that the recalculation of the SSI fractions will be performed in a manner consistent with the Court's best data available standard. Although much more could be said about the deficiencies in that description of the methodology, the following few

---

[4] It seems that CMS is not going to decide exactly how it will recalculate the SSI fractions until the Court rules on how much transparency will be required, which is another good reason why the Court should retain jurisdiction and require the Secretary to furnish the hospital with sufficient information to meaningfully review the recalculations.

points should suffice to show why the Secretary should be required to provide sufficient information to the hospital to facilitate review of the recalculated SSI fractions.

For example, the Secretary's memorandum (at 7-8) says that CMS "would use SSNs in the data matching process." To someone who is unfamiliar with the match processes, this may sound good; but, according to the Secretary's memorandum, CMS would not actually use the SSNs directly to match its inpatient hospital stay records, presumably in its MEDPAR file, with the updated SSI entitlement data provided to CMS by SSA. Rather, the Secretary indicates that CMS would use the SSNs on an updated SSI tape to match against SSNs in a Medicare Enrollment Database in order to find Medicare identification numbers ("HICANs") in the Enrollment Database. CMS would then match the "cross-walked" HICANs from the Enrollment Database with HICANs reflected on some sort of Medicare claims records. In other words, this match process would still be based on HICANs that are not individual-unique identifiers and that change over time -- the precise problem that the Court identified in its decision.

Moreover, this match process, like CMS' existing process, will produce false negatives to the extent that the Enrollment Database does not include an SSN for each Medicare beneficiary or does not include all HICANS that were ever assigned to each Medicare beneficiary. Yet, nothing in the Secretary's memorandum describes any steps that CMS has taken, or would take, to test and validate the extent to which the Enrollment Database has an SSN for all Medicare beneficiaries, whether that database has all HICANs ever assigned to each beneficiary, and what actions CMS would take to obtain missing SSNs or HICANs from SSA.

With respect to this problem, the Secretary's memorandum merely notes in a footnote (Dft. Opp. at 8 n.5) that if the Enrollment Database does not include a SSN for a Medicare beneficiary, then "CMS would have to make use of other patient identifiers." The memorandum does not say what those identifiers would be or how CMS would use them "in order to ensure that the individual's records were fully accounted for in the new data matching process." *See* Dft. Opp. at 8 n.5.

In any event, one obvious and simple step toward correcting the problem of missing SSNs in the Secretary's Enrollment Database is for the Secretary to identify the Medicare beneficiary records that are missing a SSN and obtain the SSNs for those beneficiaries from SSA -- the agency that assigns both SSNs and HICANs for Medicare beneficiaries. Another simple step is to run secondary matches on alternative patient identifiers consistent with the Court's decision. Opinion at 48. But, the Secretary's memorandum does not indicate that CMS would take either of those steps. And, yet, we know that even a seemingly small error rate of just 1.6% would produce an underpayment to Baystate exceeding $3,000,000 for just the four fiscal years at issue. *See* Plaintiff's Response to Amicus Brief at 4-5 [Doc. No. 31].

Similarly, the Secretary's memorandum (at 5) states that CMS would obtain an updated SSI tape from SSA that would include forced pay records. Even if true, however, that will not solve the problem with forced payment cases. The record indicates that the SSI tapes have included forced pay records since around 1996 - when the stale records problem was addressed (but only prospectively) - but CMS continues to miss most of those records in its match process because CMS drops most of the forced pay records it receives on the SSI tape from SSA based on the false assumption that they are

duplicate records. PRRB Dec. at 26-27 (Admin. Rec. 156-57). Nothing in the Secretary's memorandum even begins to address how the Secretary's hypothetical methodology would address that problem with CMS' own match process, and nothing in the Secretary's memorandum provides any reasonable basis for the hospital to believe that this problem would be corrected.

In order to facilitate review of the Secretary's recalculation of the SSI fractions, the Secretary must be required to furnish sufficient information concerning the recalculation process, the data used, and the steps taken to perform the recalculations, to enable the hospital and a reviewing court to determine whether the Secretary has recalculated the SSI fractions properly using the best data available as required by the Court's decision in this case.[5] The hospital has no other adequate means of obtaining that information, and it cannot reasonably be expected to simply accept on faith that CMS has correctly recalculated the SSI fractions in a manner consistent with best data available standard established in the Court's decision in this case.

## II. THE COURT HAS AUTHORITY TO RETAIN JURISDICTION OVER THIS CASE WHILE CMS PERFORMS THE RECALCULATIONS ON REMAND.

---

[5] The hospital has been, and remains, willing to work with the agency to reach an agreed-upon process for recalculation. The hospital initially expressed its willingness to entertain discussion of prospects for resolving any aspect of plaintiff's motion in conferring with the Secretary's counsel about the motion before it was filed. After the motion was filed, the parties met once in early May. Two subsequent meetings were scheduled for May but cancelled. In late May, there was an exchange of information. Thereafter the hospital agreed to two more requests for extension of time for the Secretary to respond to plaintiff's motion as an accommodation to the agency, and the press of other business on agency staff, but, the hospital received no further substantive communication from the agency. In mid-July, the hospital notified the Secretary's counsel and the Court that the hospital would agree to no further extensions of time for the Secretary to respond to the hospital's motion.

The Secretary's memorandum offers no good reason why the Court should not retain jurisdiction of this case, particularly in consideration of the fact that the hospital may have no other means to obtain the information needed to review the Secretary's recalculations of the SSI fractions. Instead, the Secretary argues (Dft. Opp. at 11) that the Court's decision overturning the Secretary's final decision below strips the Court of its inherent power to retain jurisdiction in order to ensure that its remedial order is given effect on remand. This novel theory, unsupported by citation to any case precedent in this circuit, is clearly wrong.[6]

As initially noted in Plaintiff's motion, circuit precedent establishes that the reviewing court in action for judicial review under the Administrative Procedure Act ("APA") may retain jurisdiction while vacating an agency's final decision and remanding for further proceedings. In *Chen v. General Accounting Office*, cited on pages 13-14 of plaintiff's motion, the Court of Appeals expressly retained jurisdiction over the case while vacating a final agency decision and remanding for further proceedings. 821 F.2d 732, 738, 741 (D.C. Cir. 1987). In that case, the Court reviewed a final agency decision pursuant to 31 U.S.C. § 755, which, like section 1395oo(f) of the Medicare Act, provides for judicial review of an agency's "final decision." Similarly, in *Charlton v. Federal Trade Commission*, the Court of Appeals remanded the case to the district court with instructions for the district court to vacate an agency's final decision, remand to the agency with instructions for further proceedings, and retain jurisdiction of the case

---

[6] Of course, if this proposition were true (and it is not), then a federal agency could effectively evade judicial review of agency action simply by reissuing the similar determinations again and again on successive remand proceedings, and the reviewing court would be powerless to retain jurisdiction in order to ensure that its remedial order is properly implemented on remand.

pending completion of the agency's activities on remand. 543 F.2d 903, 908 (D.C. Cir. 1976).

### III. THE COURT SHOULD ALSO RETAIN JURISDICTION TO ENSURE THAT THE AGENCY PERFORMS THE RECALCULATIONS AND MAKES THE ADDITIONAL PAYMENTS DUE WITHIN A REASONABLE PERIOD.

The record and the Court's decision in this case show that the Secretary's calculations of the SSI fractions have been incorrect since the DSH payment was adopted in 1986. CMS staff testified, and the Court affirmed the PRRB's finding, that the agency knew about some errors in its calculation beginning at least as early as 1993. *See* Opinion at 42. Since then, the agency corrected one error involving the omission of inactive SSI records (but only prospectively for 1996 and later years) while others remained uncorrected. And all of these errors remained hidden from Baystate and other hospitals until they were uncovered after years of litigation in this case. At this point, it certainly is not unreasonable for the hospital to request that CMS recalculate the SSI fractions and pay the hospital the additional DSH amounts due, with interest, within a reasonable period.

The Secretary admittedly does not need significant time to recalculate the SSI fractions at issue. He agrees that CMS should be required to pay Baystate the additional DSH amounts due for the years at issue, plus interest, Dft. Opp. at 3, and he says that CMS knows how to recalculate the SSI fractions consistent with the Court's decision. *Id*. at 4, 10. By his own admission, then, there are no technical difficulties standing in the way of the agency's prompt compliance with the Court's decision.

But, in the event that the Secretary nevertheless does delay implementation of the Court's order, the hospital would have no other recourse, except in an action to this

Court, to compel the Secretary to perform the recalculations and make payment of the additional DSH amounts due the hospital, plus interest.[7]  Under the Secretary's construction of the Medicare statute, the PRRB would have no power to compel the Secretary to perform the recalculations and issue the revised payment determinations, even if they are unreasonably delayed.  *See* 42 U.S.C. § 1395oo; *see also Hospital Corporation of America v. BlueCross BlueShield Assn,* CMS Adm'r Dec. (Mar. 3, 2005), *reprinted in* MEDICARE & MEDICAID GUIDE (CCH) ¶ 81,361 (holding that the PRRB does not have authority to compel the issuance of an untimely payment determination or "Notice of Program Reimbursement" even if a hospital is prejudiced by the agency's delay).  Accordingly, the hospital requests that the Court retain jurisdiction over this case while the agency completes its activities on remand.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in the memorandum in support of its motion, plaintiff requests that the Court grant its motion in

---

[7]  The Secretary's memorandum (Dft. Opp. at 4,10) suggests that the requirement to pay interest on the additional DSH amounts owed to Baystate for the four years at issue in this case provides all the incentive that CMS needs to expedite the recalculation of the hospital's SSI fractions.  Opp. at 4.  Tellingly, however, the Secretary's memorandum stops short of saying that CMS will in fact expedite those recalculations or that CMS will even recalculate the fractions within any reasonable period.  Moreover, the requirement to pay interest on the amount in controversy for Baystate's four fiscal years at issue in this case provides little or no incentive for CMS to promptly revise its calculations of the SSI fractions for prior years at issue in this case.  This argument is a smokescreen.  As the Court is aware, there are hundreds of other appeals pending before the PRRB on this very same issue. The longer CMS delays its implementation of the Court's order in this case, the longer it may continue to delay correction of errors in those cases and the longer CMS can delay those payments, which in the aggregate would far outweigh the additional DSH payments and interest owed to Baystate.  The delay that CMS has achieved so far has already given the Secretary time to change the appeal rules so that discovery of relevant evidence concerning CMS' calculation of the SSI fraction may not be obtained from the Secretary, CMS or SSA.

its entirety, including its requests for an order directing the Secretary to recalculate the SSI fractions and pay the hospital the additional DSH amounts due, plus interest, directing the Secretary to provide the hospital with sufficient information concerning the recalculation process for the hospital to reasonably assure itself that fractions at issue have been recalculated in accordance with the Court's decision in this case, and retaining jurisdiction over the case while the agency completes its activities on remand.

15

        Respectfully submitted,


/s/ Christopher L. Keough
Christopher L. Keough
 DC Bar No. 436567
KING & SPALDING, LLP
1700 Pennsylvania Avenue, N.W.
Suite 200
Washington, D.C. 20006-4706
(202) 626-5451 (phone)
(202) 626-3737 (fax)

Counsel for Plaintiff


John M. Faust
 DC Bar No. 433553
VINSON & ELKINS L.L.P.
1455 Pennsylvania Avenue, N.W.
Suite 600
Washington, D.C. 20004-1008
(202) 639-6500 (phone)
(202) 639-6604 (fax)

Of Counsel for Plaintiff

Dated: August 25, 2008