UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **BAYSTATE MEDICAL CENTER,**<br><br>    Plaintiff,<br><br>    v.<br><br>**MICHAEL O. LEAVITT, Secretary,**<br>**United States Department of Health and**<br>**Human Services, et al.,**<br><br>    Defendants. | Civil Action No. 06-1263 (JDB) |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of plaintiff Baystate Medical Center ("Baystate") to amend the Memorandum Opinion and Order issued on March 31, 2008 ("Mem. Op.").[1]  In that opinion, the Court reviewed the final decision of the Secretary of the Department of Health and Human Services ("Secretary") concerning the calculation of payments known as "disproportionate share hospital" ("DSH") adjustments to Baystate for fiscal years 1993-1996. The Court held that certain aspects of the Secretary's decision were arbitrary and capricious and other aspects were inadequately explained or required further evidentiary proceedings.  In considering the appropriate remedy, the Court rejected Baystate's request to order the agency to take a series of specific actions on remand because it ran afoul of settled precedent prohibiting the Court from "retain[ing] jurisdiction to devise a specific remedy for the Secretary to follow." 545 F. Supp. 2d at 58.  The Court then remanded the case to the Secretary "for further action consistent with th[e] Memorandum Opinion," including further evidentiary proceedings and explanation.  Order at 1 (filed Mar. 31, 2008); 545 F. Supp. 2d at 58.

---

[1]  The opinion is reported at 545 F. Supp. 2d 20 (D.D.C. 2008).

Baystate now moves to amend the portions of the Court's decision addressing remedy. Specifically, Baystate requests an order expressly vacating the Secretary's decision and requiring recalculation and payment of the amounts due, as well as interest under the statute. Baystate also requests that no further evidentiary proceedings and explanation in support of the existing decision be allowed because there is a strong likelihood that such proceedings would be futile and would add unnecessary delay. Lastly, Baystate fears that the Secretary will not fully implement the Court's decision and, hence, asks the Court to retain jurisdiction, set a reasonable timetable for corrective action, require progress reports, and provide directions to the Secretary that would provide Baystate with a "reasonable means of reaching assurance that the errors . . . have been properly corrected." Pl.'s Mot. at 11-16. The Court addresses each of Baystate's requests below.

## I.   Vacatur and Recalculation of Payments

The first part of Baystate's request is easily resolved. The Memorandum Opinion effectively imposes an obligation on the Secretary, acting through the Administrator of the Centers for Medicare and Medicaid Services ("CMS"), to recalculate the SSI fractions based on the best available data and then revise the DSH payments owed to Baystate. See 545 F. Supp. 2d at 57-58 (holding that the Administrator failed to use the "best available data" in several respects, and that "the Administrator's decision to deny retrospective relief was arbitrary and capricious"). Baystate asks the Court to make this ruling more explicit -- that is, to expressly vacate the Secretary's final decision and require the Secretary to pay Baystate the additional DSH amounts due as a result of the forthcoming corrections to the calculation of the SSI fraction. See Pl.'s Mot. at 3-5, 11. Baystate also has informed the Court that interest on those sums is due in accordance with 42 U.S.C. § 1395oo(f)(2). Id. at 11. The government concurs with these aspects of Baystate's request for relief. Def.'s Opp'n at 3. The Court agrees that an order expressly vacating

the Secretary's final decision, requiring recalculation and payment of further sums due, and awarding interest under § 1395oo(f)(2) is appropriate, and will enter an order granting Baystate such relief.

## II.     Further Proceedings on Remand

Both Baystate and the Secretary ask the Court to reconsider that part of the decision holding that "a remand is necessary to determine whether individuals without Title II numbers were excluded from the match process and also to allow the Administrator to articulate a reasoned explanation, if there is one, for why social security numbers and other patient identifiers (such as the patient's name) are not the 'best available data' that should be incorporated into the match process." 545 F. Supp. 2d at 48-49. Baystate opposes such further proceedings on the ground that there is a strong likelihood that they would be futile and would add unnecessary delay.[2]  See Pl.'s Mot. at 6-11.

The Secretary also wishes to dispense with further evidentiary proceedings on these issues, but for an entirely different reason. He intends, in essence, to abandon the SSI eligibility tapes that were previously used to determine the number of patients receiving SSI benefits (the

---

[2]  Baystate contends that the administrative record already establishes the unavailability of the evidence that could show with certainty whether SSI records without Title II numbers were excluded from the match process -- because the version of the computer program that was used during the years at issue does not exist and cannot be recreated. Pl.'s Mot. at 6-8. Baystate also contends that, even if individuals without Title II numbers were included in the match process, the process still would produce false negatives because CMS compares an individual's social security numbers to a HICAN identifier that may or may not be based on that social security number -- as Baystate puts it, an "apples to oranges" comparison. Id.

"numerator" of the SSI fraction) and begin anew with SSI eligibility data tapes compiled by the Social Security Administration ("SSA") long after the fiscal years at issue.[3]  See Def.'s Opp'n at 5. He anticipates that these updated tapes will cure all of the flaws identified by the Court and he further explains that this approach is borne of necessity:

> [T]he Court held that, for each of Plaintiff's fiscal years 1993 through 1996 . . . , the Secretary should have used the later of the two SSI eligibility tapes that were furnished by the Social Security Administration ("SSA").  Mem. Op. at 37-40. However, neither CMS nor SSA has been able to locate any of the SSI eligibility data tapes that were provided to CMS by SSA contemporaneously with each specific year at issue.  Accordingly, in recalculating Plaintiff's SSI fraction for each year at issue, CMS would have to use an updated SSI eligibility data tape furnished by SSA.  These updated SSI eligibility data tapes would be compiled long after the fiscal years at issue, which will allow retroactive changes in SSI eligibility status to be accounted for in CMS's new data matching process. . . .
>
> . . . In recalculating the disputed SSI fractions, SSI eligibility records that lacked Title II numbers, on the updated SSI eligibility data tapes furnished by SSA, would be accounted for in the process of matching Medicare Part A eligibility information (from the MEDPAR data file) with SSI eligibility information (from the updated data files furnished by SSA). . . .

Id. at 5-6.  The Secretary recognizes that the Court also ordered a remand for a reasoned explanation, if there is one, for why social security numbers and other patient identifiers (such as the patient's name) are not the "best available data" for purposes of matching Medicare beneficiaries with SSI recipients.  Id. at 7.  He represents, however, that this is no longer

---

[3]  The Secretary notes that, effective March 31, 1995, the SSA became an independent agency apart from the Department of Health and Human Services.  See Def.'s Opp'n at 11 n.6 (citing 42 U.S.C. § 901(a)); see also Pub. L. 103-296, § 110(a), 108 Stat. 1464, 1490 (1994). Thus, it asks the Court to consider amending that line of the Memorandum Opinion describing CMS and SSA as "two divisions of a single agency." Def.'s Opp'n at 11 n.6.  However, for three of the four fiscal years at issue -- 1993, 1994, and 1995 -- CMS's predecessor and SSA were both divisions within HHS.  Furthermore, the Secretary does not dispute that the administrative record established that HHS had a "close working relationship" with SSA concerning the transmission of SSI elgibility data for all of the years at issue.  See 545 F. Supp. 2d at 44-45.  For these reasons, the change in the SSA's organizational status after March 1995 has no impact on the Court's decision.  However, to ensure factual accuracy, the Court will recognize in the accompanying order that SSA ceased being a division of HHS effective March 31, 1995.

necessary because "in recalculating the disputed SSI fractions, the agency would use SSNs in the data matching process." Id.

In light of the Secretary's representations, and Baystate's longstanding position in support of the use of updated SSI data, the Court agrees that it makes no sense to enforce the remand for additional evidentiary proceedings on whether SSI records lacking Title II numbers were, in the past, excluded from the match process, or to require the Secretary to further explain the practice of omitting social security numbers from the match process for the years at issue. Of course, any future explanation in support of the recalculations of Baystate's SSI fractions for the years at issue will presumably describe how the social security numbers and other patient identifiers were incorporated into the match process and also address the principal problem that "missed matches" will result if inconsistent patient identifiers are utilized.[4] See 545 F. Supp. 2d at 47-48.

## III. Retention of Jurisdiction

Lastly, Baystate asks the Court (1) to retain jurisdiction while the Secretary implements

---

[4] Baystate has expressed concern that the Secretary's use of social security numbers in the forthcoming recalculation of its SSI fractions will be nominal. In Baystate's view, under the new match process described by the Secretary, "CMS would not actually use the SSNs directly to match its inpatient hospital stay record, presumably in its MEDPAR file, with the updated SSI entitlement data." Pl.'s Reply at 8. Instead, CMS would only use the SSNs to find HICANs in the Medicare Enrollment Database, then turn around and conduct a match process with those HICANs, which Baystate believes would be inadequate because HICANs may change over time (e.g., upon marriage). Id. Baystate also notes that the Medicare Enrollment Database may not have a social security number for each Medicare beneficiary. Id.

These are legitimate concerns. But the Secretary has emphasized that its limited brief on this subject "do[es] not represent a full description of the new data matching process that CMS would use in recalculating Plaintiff's SSI fractions" (Def.'s Opp'n at 8 n.5), nor would the Court expect a full description since the exact standards governing the remand have not, until now, been resolved in light of the motion to amend. The Secretary also has recognized that the Medicare Enrollment Database may lack social security numbers for some patients and has stated his intent to use other patient identifiers in such circumstances. Id.

further proceedings on remand, (2) direct completion of the remand proceedings within a reasonable period, (3) require progress reports, and (4) require the Secretary to provide Baystate with "reasonable means of reaching assurance that the errors in the Secretary's prior calculations have been properly corrected in accordance with the Court's order."  See Pl.'s Mot. at 11-16. Baystate concedes that the Court is without authority to craft or direct a specific remedy on remand, but believes retention of jurisdiction and the requested level of oversight is permissible. The Secretary opposes this last request in its entirety, noting that the Court already has rejected Baystate's request for a deadline for completing the remand proceedings and for recalculation instructions beyond the standards already described in the Memorandum Opinion.  Def.'s Opp'n at 8-11.

The Court recognizes that it has the discretion to retain jurisdiction over a case pending completion of a remand and to order the filing of progress reports.  See Cobell v. Norton, 240 F.3d 1081, 1109 (D.C. Cir. 2001).  However, this discretion is typically reserved for cases alleging unreasonable delay of agency action or failure to comply with a statutory deadline, or for cases involving a history of agency noncompliance with court orders or resistance to fulfillment of legal duties.  Id. (citing In re United Mine Workers of Amer. Int'l Union, 190 F.3d 545, 546 (D.C. Cir. 1999), Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 760 (D.C. Cir. 1997), and Air Line Pilots Ass'n v. Civil Aeronautics Bd., 750 F.2d 81, 88-89 (D.C. Cir. 1984)).  The Court does not find any of those circumstances present here.[5]  The norm is to vacate agency action that is held to be arbitrary and capricious and remand for further proceedings

---

[5] The Court does not consider the years-long administrative litigation before the Provider Reimbursement Review Board and the CMS Administrator to indicate recalcitrance and resistance to fulfilling legal duties, but instead to reflect the kind of hard-fought litigation that regularly occurs in cases involving programmatic relief and multi-million dollar payments.

consistent with the judicial decision, without retaining oversight over the remand proceedings. See, e.g., Burlington Resources, Inc. v. FERC, 513 F.3d 242, 251 (D.C. Cir. 2008) (vacating and remanding agency action a second time for further adjudication without retaining jurisdiction); North Carolina v. EPA, 531 F.3d 896, 929-30 (D.C. Cir. 2008) (vacating agency rule as "fundamentally flawed" and remanding for further proceedings without retaining jurisdiction); Wedgewood Village Pharm. v. DEA, 509 F.3d 541, 553 (D.C. Cir. 2007) (vacating agency order and remanding for further adjudication proceedings without retaining jurisdiction); Environmental Defense Fund v. EPA, 898 F.2d 183, 190 (D.C. Cir. 1990) (vacating agency rule and remanding for further action without retaining jurisdiction, and declining petitioner's request to impose two-year deadline even though original statutory deadline for action at issue was two years).

Baystate's request for judicial management of the remand proceedings appears to arise from its concern that the Secretary will not recalculate the DSH payments in full compliance with the standards articulated in the Court's Memorandum Opinion and, furthermore, that the process will be conducted in secret, without participation from Baystate. Baystate refers the Court to an amended regulation promulgated last May, which provides that the Board's discovery procedures will no longer apply to CMS, the Secretary, or any other federal agency. See 73 Fed. Reg. 30190, 30215-16, 30218, 30220 (May 23, 2008). Baystate predicts that, with administrative discovery having been largely cut-off, neither Baystate nor the Court will be able to determine whether the recalculated SSI fractions are in compliance with the Court's Memorandum Opinion. See Pl.'s Reply at 5. In response, the Secretary submits that the Freedom of Information Act has long been -- and continues to be -- the primary mechanism for obtaining agency documents, that CMS can expedite FOIA requests where the requestor demonstrates a need, and that the agency's Touhy

regulations provide a mechanism for Baystate to obtain deposition testimony from CMS employees.  See Def.'s Surreply at 2 & n.2.  Baystate, in turn, anticipates that these alternatives will be time-consuming and likely to produce inadequate responses.[6]  Pl.'s Response to Def.'s Surreply at 2-7.

Ultimately, Baystate's request that the Court retain jurisdiction is premised on the Court assessing the adequacy of the remand proceedings as they progress.  But none of the cases cited by Baystate adopt that approach.[7]  Indeed, it comes perilously close to involving the Court in reviewing non-final agency actions.  Judicial review of the recalculated DSH payments comes, however, only after final agency action -- that is, issuance of a revised notice of program reimbursement subject to review by the Board, the Secretary, and then the Court.  See 42 U.S.C. § 1395oo(a), (d), (f); 42 C.F.R. § 405.1889; see also 545 F. Supp. 2d at 24 (discussing final agency action in context of DSH payments).  As this Circuit has observed, where there is a remand after reversal, "courts are not charged with general guardianship against all potential mischief in the complicated tasks of government," but instead must review final actions under the APA.  PPG Indus., Inc. v. United States, 52 F.3d 363, 365 (D.C. Cir. 1995).  Hence, the Court declines Baystate's request to retain jurisdiction and exercise continuing oversight over the remand process.

---

[6] The same, of course, could be said for discovery, particularly in light of CMS's longstanding position that the Board does not have the authority to compel CMS to comply with Board orders.  See Def.'s Surreply at 2-3; see also Pl.'s Mem. in Supp. of Mot. for Summ. J. at 15, 20 n.6 (noting that CMS had refused to comply with Board subpoenas for SSI eligibility records).

[7] See, e.g., Amer. Iron & Steel Inst. v. OSHA, 939 F.2d 975, 1010 (D.C. Cir. 1991) (vacating in part agency decision and retaining jurisdiction with limited instructions "to return the record . . . upon completion of its review on remand"); Chen v. GAO, 821 F.2d 732, 741 (D.C. Cir. 1987) (vacating agency decision, retaining jurisdiction, and directing agency to apply D.C. Circuit law on remand).

It bears noting that the absence of judicial oversight over the remand proceedings does not leave the agency with unfettered discretion to conduct the remand behind an iron curtain. The agency has strong incentives to produce a complete record that fully addresses the rulings made by this Court, for it is obligated to conduct further proceedings consistent with the Memorandum Opinion issued on March 31, 2008 as well as this decision. Furthermore, the agency is undoubtedly aware that, if judicial review of recalculated DSH payments becomes necessary, even under the deferential APA standard of review, the Court's "inquiry into the facts [must] be searching and careful," and it must be satisfied that the agency has "'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" See 545 F. Supp. 2d at 35 (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983), and Alpharma, Inc. v. Leavitt, 460 F.3d 1, 6 (D.C. Cir. 2006)). The Court will not defer to an agency's conclusory or unsupported assertions. See McDonnell Douglas Corp. v. U.S. Dep't of the Air Force, 375 F.3d 1182, 1187 (D.C. Cir. 2004). Hence, the Court expects that, on remand, the agency will make good faith efforts to perform the recalculations consistent with this Court's opinions and develop a complete administrative record. The Secretary will most certainly be aided by Baystate's advocacy in furtherance of compilation of a fulsome record that establishes how the recalculations for the relevant years are determined.

## **CONCLUSION**

For the foregoing reasons, the Court will grant in part and deny in part Baystate's motion to amend the March 31, 2008 Memorandum Opinion and Order. The Court will vacate the Secretary's final decision and expressly direct the Secretary to recalculate Baystate's SSI fractions for fiscal years 1993 through 1996 consistent with that Memorandum Opinion as well as this one.

The Court will also require the Secretary to pay Baystate any additional monies due plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2). The evidentiary hearing and additional explanation referenced in the earlier Memorandum Opinion (see 545 F. Supp. 2d at 47-49, 58) will no longer be required due to changed circumstances. A separate order is issued herewith.

/s/
JOHN D. BATES
United States District Judge

Date: November 7, 2008