
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BAYSTATE MEDICAL CENTER,**<br><br>    **Plaintiff,**<br><br>            v.<br><br>**MICHAEL O. LEAVITT, Secretary,**<br>**United States Department of Health and**<br>**Human Services, et al.,**<br><br>    **Defendants.** | Civil Action No.  06-1263 (JDB) |

**MEMORANDUM OPINION**

Before the Court is the joint status report of plaintiff Baystate Medical Center ("Baystate") and defendants setting forth their separate proposals for further proceedings on Counts Two and Three.  The Court previously entered two opinions and orders fully resolving the merits of Baystate's primary claim in this case -- the challenge in Count One to the final decision of the Secretary of the Department of Health and Human Services ("Secretary" or "HHS") concerning the calculation of payments known as "disproportionate share hospital" ("DSH") adjustments to Baystate for fiscal years 1993-1996.  See 545 F. Supp. 2d 20 (D.D.C. 2008) ("Baystate I"), amended in part, --- F. Supp. 2d ---, 2008 WL 4831216, at * 3-4 (D.D.C. Nov. 7, 2008) ("Baystate II").   The parties have deferred briefing on Counts Two and Three for the past two years, anticipating that resolution of Count One potentially would obviate the need to litigate Counts Two and Three.  Those counts are focused on whether HHS or the Social Security Administration has a duty to produce the social security income ("SSI") entitlement records for all of Baystate's Medicare inpatients for fiscal years 1993-1996.  Baystate apparently contemplated that it would pursue production of the SSI records covered by Counts Two and

Three only if it received an adverse ruling on Count One, and then use that information to demonstrate that its DSH adjustments were unlawfully calculated.  See Compl. ¶¶ 362-63; Joint Proposed Briefing Schedule at 1 (filed Dec. 18, 2006).

Baystate now summarily requests that the Court direct entry of final judgment as to Count One pursuant to Fed. R. Civ. P. 54(b), and hold in abeyance further proceedings on Counts Two and Three for a six-month period, anticipating that the Secretary's upcoming recalculation of Baystate's DSH adjustment will impact Baystate's decision whether to pursue the remaining counts.  Defendants oppose the entry of final judgment on Count One on the ground that such action would result in a piecemeal appeal.  They further request that briefing on Counts Two and Three commence in the near future.

Rule 54(b) authorizes the Court to "direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay."  The Supreme Court has held that certain steps must be followed in making this determination.  See Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7 (1980).  First, a court must determine that it is dealing with a "final judgment."  Id.  The decision for certification must be a "'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'"  Id. (quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 436 (1956)).  Then, the court "must go on to determine whether there is any just reason for delay."  Id. at 8.  The Supreme Court cautioned that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims."  Id.  In considering whether there is "no just reason for delay," the court must consider judicial administrative interests as well as the equities involved."  Id.  The

judicial interests encompass the interest of the judiciary in avoiding piecemeal appeals of claims that are not truly "separable" and the interest of the appellate court in particular in avoiding decision of "the same issues more than once even if there were subsequent appeals." Id. at 8-9. The equities consider the impact of delayed review on the parties. Id. at 9-10. A district court must supply a meaningful explanation for not allowing the "normal delay" inherent in litigation of multiple claims. See Building Indus. Ass'n of Superior California v. Babbitt, 161 F.3d 740, 743-44 (D.C. Cir. 1998).

     Here, Baystate easily passes the first step. The Court's decision on Count One is a "judgment" on Baystate's claim that the Secretary's final decision was arbitrary and capricious -- a type of ruling well-recognized as an appealable merits ruling under the Administrative Procedure Act -- and it is "final" in the sense that it is an "ultimate disposition of an individual claim."  Indeed, the final order resolving Count One vacates the Secretary's final decision and imposes a duty on the Secretary to recalculate Baystate's DSH adjustments. See Order (filed Nov. 7, 2008). No further judicial action on Count One remains; the next judicial action, if any, will come following a new complaint seeking judicial review of the Secretary's final action after the remand proceedings. See Baystate II, --- F. Supp. 2d ---, 2008 WL 4831216, at * 3-4.

     Having found finality, the issue remains whether there is any just reason for delaying entry of final judgment under Rule 54(b) -- the step at which the D.C. Circuit considers a district court opinion most significant. See Building Indus. Ass'n, 161 F.3d at 744. Here, the judicial administrative interest in avoiding piecemeal appeals would not be compromised by the entry of a final judgment on Count One because the nature of the claim in Count One is "separable" from that in Counts Two and Three. Count One is a challenge to final agency action by the Secretary of HHS applying the APA standard of review, whereas Counts Two and Three -- as defendants

acknowledge -- present "straightforward legal issues regarding plaintiff's request for records administratively [under an administrative subpoena] and under the Freedom of Information Act."[1]  See Joint Status Report at 2.  Indeed, the relief sought under Counts Two and Three is, in the main, an order compelling the Social Security Administration to produce records.  See Compl. ¶¶ 364, 371.  Furthermore, it is unlikely that the appellate court will be faced with same issues more than once in the event a future decision on the remaining counts is separately appealed.   The appeal of the decision on Count One will focus on whether the Secretary's final decision is arbitrary and capricious under the traditional APA standard of review and, in particular, is likely to focus on the following issues:  whether the Secretary reasonably excluded former SSI recipients with "Section 1619(b)" status from the SSI fraction, whether the Secretary relied on the best available data to calculate the SSI fraction, whether Baystate is entitled to retrospective relief, and whether Baystate is entitled to more relief on remand than that ordered by the Court.  In contrast, appellate review of a decision on Counts Two and Three will focus simply on whether Baystate is entitled to production of the SSI eligibility records.

Turning to the equities involved, the Court considers the impact of delayed appellate review on the parties.  Both Baystate and the Secretary would appear to be harmed by a delay in judicial review of the Court's decision on Count One, although the Secretary has not pressed its stake in immediate review.  Baystate's interest lies in prompt payment of already long-delayed

---

[1]  Not surprisingly, there is some relationship between Count One and the counts still pending.  Baystate alleges that, because the SSI records were essential in resolving the dispute over its entitlement to further DSH payments, the Secretary had a duty to enforce an administrative subpoena for those records.  Compl. ¶¶ 319-33, 361-63.  Baystate also intended to use any SSI eligibility records recovered under Counts Two and Three to further argue that the final agency decision challenged in Count One was arbitrary and capricious.  But whether Baystate has a right of access to those records presents a freestanding issue, factually and legally distinct from the validity of the Secretary's final decision as to Baystate's DSH adjustments.

corrected DSH adjustments for fiscal years 1993-1996.  This can only happen if its DSH adjustment for those years is recalculated with finality on remand -- a process undermined by a subsequent appellate decision modifying the methodology the Secretary must apply.  The Secretary has an interest in prompt judicial review of the decision on Count One because it will bear the burden of undertaking remand proceedings that may have to be done yet again if the appellate court later changes the resolution of even a single issue -- or that may turn out to be unnecessary in the event this Court is reversed.  Again, the Secretary has not pressed this interest, apparently because he wishes to delay entry of final judgment until Counts Two and Three are resolved.  But as noted above, Baystate, too, has a strong interest in avoiding a second do-over, and hence, the Secretary's willingness to take that risk is not dispositive.  It also bears noting that the Court sees no unfairness to any party in having appellate review of Count One proceed now, nor have the parties identified any.

      For these reasons, the Court will direct entry of final judgment as to Count One pursuant to Fed. R. Civ. P. 54(b). The Court will grant Baystate's request to defer proceedings on Counts Two and Three for a six-month period so that Baystate may decide whether to pursue those counts.  An order and final judgment have been issued on this date.


                                                /s/
                               JOHN D. BATES
                      United States District Judge

Date:   December 8, 2008